187 N.J. Super. 380 (1982)
454 A.2d 917
ALICE A. AVIRETT, PLAINTIFF,
v.
RICHARD M. AVIRETT, JR., DEFENDANT.
Superior Court of New Jersey, Chancery Division Bergen County.
Decided March 5, 1982.
*381 Ellen J. Effron, for plaintiff (Effron & Finnerty, attorneys).
Stephen H. Roth, for defendant.
*382 KRAFTE, J.J.D.R.C., (temporarily assigned).
A unique question regarding rehabilitative alimony has surfaced during an otherwise ordinary enforcement motion. Succinctly stated, the question is this: Do the modification parameters set forth in Lepis v. Lepis, 83 N.J. 139 (1980), apply to a voluntarily executed property settlement agreement which contains specific provisions for rehabilitative alimony as well as complete equitable distribution allocation, both factors being dependent upon the other? There does not appear to be an answer to this question by a court in this State.
An extensive property settlement agreement (hereafter the agreement) was entered into between the parties, at arm's length, with the advice of counsel, and executed on November 8, 1979. A final judgment was entered on April 2, 1980, incorporating the agreement with the usual testimony regarding voluntariness, understanding, fairness and equitableness.
Section 19.1 of the agreement specifically provided for alimony to plaintiff totaling $36,000, payable $1,000 a month for three years.[1] This provision was particularly interrelated with equitable distribution and, at least impliedly, conditioned upon plaintiff's continued attendance at college and the obtaining of a Bachelor of Science degree in psychology. She earned this degree in December 1980, as anticipated. Based upon the documentation submitted, all aspects of rehabilitative alimony were considered by the parties and their attorneys.
This opinion is directed to that part of defendant's cross-motion to terminate alimony based upon a change of circumstances.
The concept of rehabilitative alimony was first substantially treated by Judge Imbriani in Turner v. Turner, 158 N.J. Super. 313 (Ch.Div. 1978). In spite of an Appellate Division decision *383 specifically disapproving of rehabilitative alimony, Arnold v. Arnold, 167 N.J. Super. 478 (App.Div. 1979), the concepts of Turner were implicitly approved in Lepis v. Lepis, 83 N.J. at 155.[2]
Let it be noted that the agreement before this court was drawn after both the Turner (April 1978) and the Arnold (April 1979) decisions were published. Therefore, this court must conclude that, in spite of the then existing state of law, as put forth in Arnold, 167 N.J. Super. at 391, i.e., "We do not agree with the general rationale ... which would permit `rehabilitative alimony' as an available viable technique for the avowed purpose of encouraging a spouse to seek employment," the parties adjusted all equities in the financial aspect of their marriage and did conclude that this technique was indeed viable for the proper dissolution of their marriage.
The report of the Supreme Court Committee on Matrimonial Litigation, Phase Two, released in July 1981, specifically and unequivocally approved the concept of rehabilitative alimony by the court, and quoted with approval, 3 Western N.E.L.Rev., 127, 132-133 (1980), as follows:
The primary goals of rehabilitative alimony ... are to reduce post-divorce recourse to the courts, to provide the supporting spouse with some degree of certainty as to the nature and extent of the support obligation owed to the former spouse, and to encourage a supported spouse to develop employment skills within a precise period of time so as to become self-supporting. [Supplement to N.J.L.J., July 16, 1981, 14].
This court would include an additional clause in the above in order to fully approach and realistically deal with a concept which, on its face, would appear to be a male-oriented, sexist approach, contrary to our Supreme Court's pronouncement in Lepis v. Lepis, supra, 83 N.J. at 155-156. That additional clause would be:

*384 "... and to provide the supported spouse with some degree of certainty as to the nature and extent of the support obligation owed by the former spouse...."
Therefore, as to the facts herein, this court finds that the supported spouse (plaintiff), after full disclosure and with the advice of counsel, entered into a full, detailed and comprehensive agreement locking all the gates, so to speak. The supporting spouse (defendant) could rely upon the fact that his support obligation was terminal. He also could depend upon the most favorable tax advantages which he received ($1,000 a month direct alimony deduction while only paying $125 a month support for each of two children, and taking both children as exemptions on his individual 1980 tax return). Conversely, this supported spouse should be allowed to depend on an agreement which provides payment to her of $1,000 a month while she is in the process of finishing a college degree and attempting to embark on a new career. The alimony this plaintiff receives is not merely money in fulfillment of a statutory duty of support owed to a spouse. Its ultimate purpose is to help produce a self-sufficient individual, benefitting not only the recipient of the alimony but the person paying the alimony. There is absolutely no reason why the supported spouse should not be entitled to the same reliance the supporting spouse enjoys. This court finds that she is so entitled.
Thus, to summarize, the following facts have been developed by the affidavits submitted herein:
1. Agreement, November 8, 1979.
2. Final judgment  April 2, 1980.
3. Rehabilitative alimony  $36,000, payable $1,000 a month for 36 months.
4. Contingency clauses making # 3 deductible.
5. Child support  $250 a month (Two children).
6. Defendant's income, 1979  $35,037.
7. Defendant's income, 1980  $28,145.
8. Plaintiff was attending college and anticipated finishing in 1980.
9. Plaintiff obtained her B.S. in Psychology in December 1980, as anticipated.
10. The parties foresaw continuation of alimony for something less than two years after plaintiff obtained her degree.

*385 11. Defendant, in his opinion, must have had sufficient income and assets in order to agree to an annual cash flow payment of $15,000 for a period of three years commencing December 1, 1979.[3]
Although the trial judge in Painter v. Painter, 118 N.J. Super. 332 (Ch.Div. 1972), set forth criteria for equitable distribution, which criteria were specifically approved in 65 N.J. 196 (1974), the actual practice has gone further, inexorably linking equitable distribution with an award of alimony. If the wife receives such liquid assets as will, or with reasonable diligence should, produce income, great weight is given thereto in fixing alimony, if any. The parties in this case took all such considerations out of the court's hands, and did, in fact, arrive at a total settlement agreement, factoring in all aspects of the marital dissolution, making all obligations terminable at a fixed time (with the obvious exception of very nominal child support). Under the very clear, very stringent terms of the agreement, defendant no doubt would have strenuously resisted and opposed any attempt by plaintiff to seek "ordinary" alimony after the full payment of rehabilitative alimony as agreed.
This court therefore finds that rehabilitative alimony, as a device fully and voluntarily agreed upon by the parties, in conjunction with a full, studied, voluntary disposition of marital assets, may be fully relied upon by both the supporting and supported spouses as delineating their alimony rights, duties and obligations.
*386 This court further finds that the modification directives in Lepis did not consider the ramifications of a voluntary agreement for rehabilitative alimony, and are therefore inapplicable to the facts in this case. Voluntary rehabilitative alimony provisions in a full agreement, as here, must be afforded greater weight and permanency than what we consider to be "ordinary" alimony. Since greater trade-offs and equitable distribution considerations are evoked in a voluntary rehabilitative consideration, it would be virtually impossible  and certainly inequitable  for a court to modify such rehabilitative alimony responsibilities without completely revamping what may be years of equitable distribution divisions. To actually do so would put to end any concept of conclusiveness of divorce judgments.
Defendant's cross-motion for termination of alimony is denied.
NOTES
[1] Satisfactory contingencies stated, therefore periodic and deductible. 1976 Code, § 71(c)(2).
[2] It is imperative to note that all New Jersey cases deal with court-imposed rehabilitative alimony, rather than rehabilitative alimony established in a voluntary agreement.
[3] It is significant to note that plaintiff was compelled to make an enforcement application in the summer of 1980, several months after the final judgment. Defendant had accumulated almost $4,000 in arrears by then. Defendant did file a cross-motion then for a reduction in alimony and child support, based on the fact that his income was reduced. The reduction was denied and not appealed. Defendant alleges he was discharged from employment on April 26, 1981 and received only unemployment compensation through December 26, 1981. Defendant, after repaying all arrears, then substantially reduced his payments in April 1981, but, significantly, made no application for any reduction until plaintiff moved for enforcement in January 1982, when he filed a cross-motion. His credibility is questioned by this court. Unilateral reductions will not be and cannot be condoned. See Marsh v. Vetter, 167 N.J. Super. 425 (App.Div. 1979).