287 N.J. Super. 337 (1996)
671 A.2d 147
LENA HEINL, PLAINTIFF-RESPONDENT,
v.
JAMES HOWARD HEINL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 24, 1996.
Decided February 14, 1996.
*341 Before Judges KING, KLEINER and HUMPHREYS.
Ralph J. Pocaro argued the cause for appellant (Pocaro & Pocaro, attorneys; Mr. Pocaro, on the brief).
*342 Robert W. Becker argued the cause for respondent (Reed and Scholl, attorneys; Donald F. Scholl, Jr., of counsel; Mr. Scholl and Mr. Becker, on the brief).
The opinion of the court was delivered by KLEINER, J.A.D.
Defendant James Heinl appeals numerous provisions of a final judgment of divorce, including alimony, child support, attorney's fees, and equitable distribution. Although several of the issues raised by defendant in this appeal are without merit, we find that there were errors in the court's decisions respecting alimony, counsel fees, and equitable distribution. In our partial reversal, we are called upon to evaluate anew the concept of rehabilitative alimony.

I
Plaintiff Lena Heinl and defendant James Heinl were married on November 17, 1984. They had two children: Jennifer, born December 26, 1985, and Michael, born June 19, 1987. The parties separated in July 1992, when defendant moved from the marital residence in Milford. Plaintiff filed her complaint for divorce on April 16, 1993. A judgment of divorce was entered on August 4, 1994 and incorporated the terms delineated in a written opinion of the trial judge.
Plaintiff, a high school graduate, also graduated from secretarial school. She worked full-time prior to the birth of the eldest child and returned to part-time secretarial work in June 1992, one month prior to the parties' separation. At the time of the divorce hearing, plaintiff worked fifteen hours per week for a realtor, at $10.50 per hour, earning $130 net income per week. On an as-needed basis, approximately four times per month, plaintiff also worked for another company earning $13.50 per hour. In 1993, plaintiff earned $8,861 in gross income.
*343 Defendant is a general foreman in Local 475 of the Pipefitters and Steamfitters Union. For the past eight or nine years, he has worked steadily for the same company. In 1990, he grossed $61,000; in 1991 he grossed $62,000; in 1992 and 1993 he grossed $73,000. Defendant's gross income each year included overtime pay.[1]
When the parties separated, they had two bank accounts worth about $16,000. They also owned a home, automobiles, and various household goods and furnishings. Defendant testified that upon separating, he left in the bank accounts $7,000 for plaintiff. However, he admitted that he then withdrew an additional $1,000 from the accounts to pay a joint $2,500 credit card debt.
Defendant had ten percent of his pay deposited into a "vacation fund" maintained by his employer. Traditionally, the parties used this money to buy furniture or make home repairs. In April 1993, the vacation fund contained $6,200. Defendant withdrew that money and furnished a new residence for himself, paid outstanding marital bills and purchased a boat.
On August 1, 1994, the trial judge issued a written opinion. The judge's findings were incorporated within the terms of the divorce judgment which: (1) granted plaintiff sole legal custody of the children; (2) set defendant's child support obligation at $370 per week; (3) ordered defendant to maintain life insurance coverage of $150,000 for the benefit of the children; (4) ordered defendant to pay plaintiff $125 per week permanent alimony; (5) permitted plaintiff to remain in the marital home and awarded her the right to mortgage and real estate tax deductions; (6) awarded plaintiff all of the personal property and possessions in the marital home; (7) ordered defendant to pay plaintiff one-half of the "vacation fund" money ($3,100) and one-half of the value of the boat ($1,150); (8) ordered defendant to pay $15,637.77 of plaintiff's counsel fees; and (9) ordered that plaintiff could claim the children as dependents *344 until she became employed full-time and then the parties would share the deduction.

II
On appeal, defendant contends that plaintiff was not entitled to an award of alimony. Alternatively, he contends that plaintiff exaggerated her expenses within her case information statement and that the judge therefore miscalculated the alimony award.
In a divorce action, courts may award alimony "as the circumstances of the parties and the nature of the case shall render fit, reasonable and just...." N.J.S.A. 2A:34-23. The basic purpose of alimony is the continuation of the standard of living enjoyed by the parties prior to their separation. Innes v. Innes, 117 N.J. 496, 503, 569 A.2d 770 (1990) (citing Mahoney v. Mahoney, 91 N.J. 488, 501-02, 453 A.2d 527 (1982)). The supporting spouse's obligation is set at a level that will maintain that standard. Id. at 503, 453 A.2d 527 (citing Lepis v. Lepis, 83 N.J. 139, 150, 416 A.2d 45 (1980)).
Factors to be considered in setting permanent or rehabilitative alimony include: (1) the actual need and ability of the parties to pay; (2) the duration of the marriage; (3) the age, physical and emotional health of the parties; (4) the standard of living established in the marriage and the likelihood that each party can maintain a reasonably comparable standard of living; (5) the earning capacities, educational levels and employability of the parties; (6) the length of absence from the job market and custodial responsibilities for children; (7) the time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to obtain appropriate employment; (8) the history of financial and non-financial contributions to the marriage by each party; (9) the equitable distribution of property ordered and any pay-outs on equitable distribution, directly or indirectly, out of current income, to the extent this consideration is reasonable, just and fair; and (10) any other factors which the *345 court may deem relevant. N.J.S.A. 2A:34-23(b)(1)-(10). One additional factor that has been considered in determining the amount and duration of support is the extent of actual economic dependency. Lepis, supra, 83 N.J. at 155, 416 A.2d 45.
To vacate a trial court's finding concerning alimony, we must conclude that the trial court clearly abused its discretion, failed to consider all of the controlling legal principles, or must otherwise be well satisfied that the findings were mistaken or that the determination could not reasonably have been reached on sufficient credible evidence present in the record after considering the proofs as a whole. Rolnick v. Rolnick, 262 N.J. Super. 343, 360, 621 A.2d 37 (App.Div. 1993). Moreover, substantial weight must be given to the judge's observations of the parties' demeanor, comprehension and speech and to the fact that the trial judge had the distinct advantage of observing the demeanor of the witnesses and a better opportunity to judge their credibility than a reviewing court. Ibid.
In his written opinion, the trial judge outlined the needs of the plaintiff predicated upon her testimony and the information provided in her case information statement. The court reduced the total sum plaintiff claimed she would require to maintain the standard of living enjoyed during the marriage. The reduction was based upon defendant's cross-examination, which revealed that plaintiff's itemized expenses were speculative and in many respects unverified. The judge then calculated plaintiff's alimony after computing defendant's obligation for child support.
After very carefully explaining his mathematical calculations and his reasons for each calculation, the judge stated:
Alimony payable to plaintiff will be taxable to her, so it is necessary to provide a gross figure that will yield her a sufficient net income to maintain herself. Estimated income taxes are between 28%-33%. I find that $125.00 per week is the necessary amount. Therefore, I Order the defendant to pay to plaintiff $125.00 per week as permanent alimony. The permanent alimony awarded is based upon the actual need of the plaintiff. It is also based upon the proven ability of the husband to pay this amount considering the duration of the marriage and the standard of living testified to by the parties. They testified that they owned their own home, each had an automobile, and they had a comfortable lifestyle. It is obvious from *346 the husband's work record and the supervisory nature of his employment that he has the ability to make these payments.
Although we cannot find error in the mathematical method utilized by the judge in calculating alimony, we do find that the court erred in his decision in three respects: (1) he failed to include the income plaintiff was then earning in her second job which appears to be $75 net per week or $322 net per month; (2) he failed to consider that plaintiff was employed only on a part-time basis although the youngest child of the marriage was then age seven and attending public school; and (3) he failed to articulate any reason for an award of permanent alimony rather than an award of rehabilitative alimony.
The parties were married in November 1984 and separated in July 1992, a period of seven years and eight months. Plaintiff is thirty-four years of age. Although the judge indicated in his findings that he considered the duration of the marriage in determining that permanent alimony was warranted, the court failed to fully articulate why a relatively short marital life required an award of permanent alimony rather than an award of rehabilitative alimony.
This is particularly important in cases in which the alimony recipient is of a relatively young age. A younger divorcee has a better opportunity to obtain employment than does an older individual who had been married and out of the work force for many years. See Capodanno v. Capodanno, 58 N.J. 113, 119-120, 275 A.2d 441 (1971); Skribner v. Skribner, 153 N.J. Super. 374, 376, 379 A.2d 1044 (Ch.Div. 1977). Cf. Lynn v. Lynn, 91 N.J. 510, 517-518, 453 A.2d 539 (1982) (holding that length of marriage and the proper amount or duration of alimony do not correlate in any mathematical formula).
Our criticism should not be construed as implying that the judge's decision was necessarily wrong. We express concern that: (1) the reasons for awarding permanent alimony, as articulated by the trial judge, were very generalized; and (2) the reasons for not *347 awarding, or even considering, rehabilitative alimony were totally absent in the judge's opinion.
Trial judges are under a duty to make findings of fact and to state reasons in support of their conclusions. R. 1:7-4. See Curtis v. Finneran, 83 N.J. 563, 569-70, 417 A.2d 15 (1980). The Supreme Court explicitly set forth in Curtis that "[i]n a non jury civil action, the role of the trial court at the conclusion of the trial is to find the facts and state conclusions of law. R. 1:7-4. Failure to perform that duty `constitutes a disservice to the litigants, the attorneys, and the appellate court.'" Ibid. (quoting Kenwood Assocs. v. Board of Adj. Englewood, 141 N.J. Super. 1, 4, 357 A.2d 55 (App.Div. 1976)).
Naked conclusions are insufficient. A judge must fully and specifically articulate findings of fact and conclusions of law. Id. at 570, 417 A.2d 15. See R. 1:7-4. The absence of adequate findings, as here, necessitates a reversal to allow the trial judge to reconsider the alimony decision. See McGee v. McGee, 277 N.J. Super. 1, 14, 648 A.2d 1128 (App.Div. 1994) (reversing award of rehabilitative alimony and remanding to permit trial court to consider permanent alimony, where trial court findings did not explain why permanent alimony had not been considered).
Rehabilitative alimony should have been seriously considered here. Plaintiff graduated from secretarial school, had been employed full-time prior to the birth of the first child, and since June 1992, has been employed in two part-time jobs. The youngest child is now in school full-time. Plaintiff offered no explanation why she could not seek full-time employment. We recognize that full-time employment may increase plaintiff's child care expenses which may have an effect on defendant's child support obligation. Nonetheless, under the facts in this case it was error not to have considered plaintiff's capacity to increase her income and reduce her economic dependency by seeking and obtaining full-time employment.
*348 Again, the trial judge may have had sustainable reasons why plaintiff's capacity for greater income was not considered. However, those reasons were not articulated in the judge's findings, contrary to R. 1:7-4.
The concept of rehabilitative alimony mentioned in Lepis v. Lepis, 83 N.J. 139, 155 n. 9, 416 A.2d 45 (1980), and Hill v. Hill, 91 N.J. 506, 509, 453 A.2d 537 (1982), was codified by legislative amendment in N.J.S.A. 2A:34-23(b) in 1988. Rehabilitative alimony is an appropriate consideration in instances in which the marriage is relatively short and the recipient spouse is capable of full employment based on experience, additional training or further education. Finelli v. Finelli, 263 N.J. Super. 403, 406, 622 A.2d 1360 (Ch.Div. 1992).
In Finelli, the trial judge, on remand for reconsideration from an unreported decision of this court, explained that he had not considered rehabilitative alimony because "[a]t no time during the full hearing on the merits did anyone supply facts on which this court could base a determination concerning rehabilitative alimony, as the court in Kulakowski did." Ibid. (citing Kulakowski v. Kulakowski, 191 N.J. Super. 609, 468 A.2d 733 (Ch.Div. 1982)). Although we note that defendant here did not urge the trial court to award rehabilitative alimony, defendant did urge that alimony in any form should be denied. In rejecting defendant's position, the judge was therefore obligated to fully articulate his reasons for granting permanent alimony. That reasoning process necessitates a consideration of rehabilitative alimony and, where appropriate, an articulation of reasons for rejection of rehabilitative alimony and an award of permanent alimony. McGee, supra, 277 N.J. Super. at 14, 648 A.2d 1128.
Furthermore, the judge erroneously failed to include the income from plaintiff's second job in his mathematical calculation of plaintiff's economic needs. Plaintiff's needs were determined to be $125 per week. Plaintiff's income on a part-time basis is $75 more per week than the earnings which were included by the judge in his calculations. It would appear that even were the *349 court to conclude on reconsideration that plaintiff need not obtain alternative employment, her former standard of living can be maintained by the payment of alimony at the rate of $50 per week.

III
Defendant contends that the judge abused his discretion in ordering him to pay plaintiff's entire counsel fee of $14,685.75 and $954.07 in costs. Defendant also contends that the judge should not have awarded attorney's fees for services spent on: (a) visitation; (b) a municipal court matter involving plaintiff and defendant's paramour; (c) a DYFS investigation; and (d) a conference conducted with plaintiff's sisters. Plaintiff maintains that the award was reasonable and should be upheld.
Upon making the award, the judge wrote:
The basis for this award is a review of the defendant's ability to pay, the number of court appearances that were required, including the municipal court proceeding which I find was a totally unnecessary proceeding; the economic conditions of the parties, and the services rendered with regard to resolving the matter. It is significant that the defendant through counsel did not participate in any meaningful discovery which would have enabled the parties to effectively negotiate and resolve the case through arbitration at the Early Settlement Panel. The defendant did not participate in meaningful settlement discussions with this Court. In essence, the defendant thumbed his nose at and made light of the entire matrimonial pretrial procedure. Defendant's uncooperative attitude was evidenced by his counsel's refusing to accept service of process, requiring substantial expenses and time and effort to have the defendant served in Easton, Pennsylvania.
It obviously was necessary for plaintiff's attorney to spend necessary time as detailed in his comprehensive and thorough affidavit attached to his application for counsel fees. The application represents reasonable hourly rates based upon the plaintiff's attorney's skill and experience. It appears from this Court's prospective [sic] that plaintiff was ably represented and the method of presentation in Court, made the issues comprehensible to the Court.
R. 4:42-9(a)(1) permits the award of counsel fees in a matrimonial action in the court's discretion. In determining whether a counsel fee should be imposed, the court must look at the requesting party's need, the other party's ability to pay and the good and bad faith of each party. N.J.S.A. 2A:34-23; Williams v. Williams, 59 N.J. 229, 233, 281 A.2d 273 (1971); Rosenberg v. Rosenberg, 286 N.J. Super. 58, 668 A.2d 84 (App.Div. *350 1995); Kothari v. Kothari, 255 N.J. Super. 500, 513, 605 A.2d 750 (App.Div. 1992).
In determining the reasonableness of any fee award, "[t]he initial focus in the calculus is appropriately directed to the time expended in pursuing the litigation." Singer v. State, 95 N.J. 487, 499, 472 A.2d 138, cert. denied 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 64 (1984). However, "time expended is only one of the factors to be considered." Swanson v. Swanson [48 Ohio App.2d 85, 2 O.O.3d 65,] ... 355 N.E.2d 894, 899 (1976).... In matrimonial actions, more so than most other areas in which counsel fees are awarded, the expenditure of attorney time is of less importance.
[Argila v. Argila, 256 N.J. Super. 484, 492-93, 607 A.2d 675 (App.Div. 1992).]
With the exception of defendant's objection to inclusion of services provided to plaintiff in municipal court, we agree with the trial judge's decision. Services rendered to plaintiff in the defense of a complaint in the municipal court instituted by defendant's paramour, although perhaps tangentially related to the marital dissolution, are not services rendered within the framework of proceedings addressed in R. 4:42-9(a)(1). On remand, the trial judge must re-evaluate the award of counsel fees and shall deduct those charges billed to plaintiff by her counsel attributable to municipal court proceedings, including preparatory time.

IV
Defendant contends that the court erred in the distribution of marital assets as required by N.J.S.A. 2A:34-23. With the exception of the judge's decision pertinent to a boat purchased by defendant for $2,200 after the separation, we find that the judge's decision was fair and equitable. On the first day of trial, by stipulation, the parties agreed to divide the equity in the marital home equally. The judge followed that divisional scheme in dividing the remaining personal property.
As noted in part one of this decision, after defendant separated from plaintiff, he withdrew his "vacation fund" totalling $6,200 and used the money to furnish a new apartment, pay previously incurred bills, and purchase a boat. The trial judge ordered defendant to pay plaintiff $3,100. That award was appropriate. *351 However, the court also ordered defendant to pay plaintiff $1,100, constituting one-half the value of the boat. This was clearly improper, given that the plaintiff had been ordered to receive fifty percent of the "vacation fund." The award with respect to the boat was a duplicative distribution. On remand, the trial court shall correct this inequity.

V
In his decision, the trial judge stated:
The parties have agreed that the wife shall remain in the house and have full utilization of the furniture and all household equipment. She may remain in the house until the youngest child reaches 18 or she remarries, or determines to move from the house. At that point in time, the house will be sold, and the value of the net equity shall be apportioned equally between the parties. The net equity will be the sales price less any existing liens and closing costs, including commissions.
The judge also wrote, "The parties have agreed that 50% of the husband's pension annuity fund will be subject to distribution."
The final judgment of divorce (prepared by plaintiff's attorney) stated:
[T]he wife shall be entitled to fifty (50%) percent of the value accrued during the term of the marriage in both the husband's annuity and pension plans. To the extent the marital home is sold within two (2) years from the date of judgment, the wife shall receive from the husband's share of the net sale proceeds, her present value interest in the annuity.
The wife's interest in the pension shall be subject to a Qualified Domestic Relations Order.
Further and in the event the wife decides to retain the marital home for a period greater than two (2) years, she shall maintain a Qualified Domestic Relations Order in the annuity.
For the purposes of the agreement both the pension and annuity shall be subject to the Qualified Domestic Relations Order outlined below. The parties, if the wife desires to sell the marital home within two (2) years, shall instruct the Benefits Administrator to rescind the Qualified Domestic Relations Order and permit the wife to receive the present value of her interest in the annuity from the husband's share of the net sale proceeds of the marital home.
Defendant claims on appeal, "There was no agreement as to the above condition that allowed Plaintiff to be paid the value of the annuity from the proceeds of [the] sale of the home." Although defendant did not agree to that particular term as part of *352 the stipulation which resolved several aspects of the equitable distribution of property dispute, the method of payment required resolution. The trial judge was therefore entitled to decide that issue. Defendant's counsel received the proposed form of judgment pursuant to R. 4:42-1(c) when plaintiff's counsel submitted it to the judge. The objection to the inclusion of payment provision within the judgment that had not been articulated by the judge in his written opinion should have been the subject of an objection to the form of the judgment. Defendant voiced no objection. On appeal, defendant has failed to articulate specifically how he has been prejudiced by the inclusion of that condition within the judgment. We therefore decline to reverse the trial judge on that particular decision.

VI
Defendant contends that he should be entitled to claim both children as exemptions on his federal income tax return.
In his written opinion, the judge wrote:
Each party is permitted to declare one of the children as a deduction for income tax purposes. As long as plaintiff is employed (full time or part time), she is entitled to take the youngest child, the husband will therefore take the oldest child as a deduction until the child attains 18.
The final judgment of divorce states:
[T]he husband and wife shall share the minor children of the marriage as dependents on their Federal and State income tax returns until the wife is employed on a full time basis. The wife shall be permitted to claim both children as dependents at such time as she becomes employed full time.... (emphasis added).
Clearly, the written provision in the judgment contradicts the express language of the judge's written opinion. Although defendant might have voiced his objection when he received the proposed form of judgment, his failure to object does not bar a grant of relief on appeal, as the error is clear on its face.
The Internal Revenue Code, 26 U.S.C. § 152(e)(1), gives a custodial parent the right to the exemption, subject to waiver by that parent. Gwodz v. Gwodz, 234 N.J. Super. 56, 62, *353 560 A.2d 85 (App.Div. 1989). The trial court may exercise its discretion in allocating tax exemptions, subject to acceptance by the Internal Revenue Service. Ibid. A court may properly seek to maximize the net income of the parties in the allocation of tax deductions. Id. Therefore, the judge's error was not in dividing the exemptions of the children between the parties. The judge did err, though, by modifying the terms of the written opinion when he executed the judgment. The amended judgment of divorce entered subsequent to our remand shall reflect that as long as plaintiff is employed either on a full or part-time basis, she shall be entitled to name the youngest child as an exemption.
In Selengut v. Ferrara, 203 N.J. Super. 249, 263, 496 A.2d 725 (App.Div.) certif. denied, 102 N.J. 316, 508 A.2d 199 (1985), and Mahonchak v. Mahonchak, 189 N.J. Super. 253, 256, 459 A.2d 1207 (App.Div. 1983), we concluded that an oral pronouncement of a judgment in open court on the record constitutes the jural act, and the entry of written judgment is merely a ministerial act memorializing the prior jural act. In State v. Pohlabel, 40 N.J. Super. 416, 423, 123 A.2d 391 (App.Div. 1956), we stated that where there is a conflict between the oral sentence and the written commitment, the former will control, since it is the true source of the sentence. We conclude that the same principle should generally apply to a conflict in a written opinion of the trial judge and the form of judgment prepared by counsel which is intended to embody the written opinion. This is quite different from the inclusion of a provision which was not addressed within the written opinion.

VII
We find the balance of defendant's contentions pertaining to equitable distribution and the trial judge's calculation of child support to be without merit. See R. 2:11-3(e)(1)(A).
The judgment is affirmed in part and reversed in part. The matter is remanded to the trial court for further proceedings consistent with this opinion.
NOTES
[1] Defendant's wages have been rounded to the closest even numerical amount.