288 N.J. Super. 209 (1996)
672 A.2d 206
SANDRA A. MILNER, PLAINTIFF-APPELLANT,
v.
EDWARD S. MILNER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 16, 1996.
Decided March 6, 1996.
*211 Before Judges SKILLMAN, P.G. LEVY and EICHEN.
Michelle Joy Munsat argued the cause for appellant.
Darrlyn Mann argued the cause for respondent (Mann & Moore, attorneys; Ms. Mann, on the brief).
Nadine Taub, attorney for amicus curiae N.O.W.-N.J. and Rutgers Law School Women's Rights Litigation Clinic, submitted a brief.
The opinion of the court was delivered by SKILLMAN, J.A.D.
Plaintiff and defendant were married in 1962. Thereafter, plaintiff worked as a clerk-typist until the parties' first child was born in 1965. Plaintiff stayed out of the workforce for the next twenty years, remaining at home to care for the parties' three children. Defendant graduated from medical school in 1966 and subsequently developed a successful practice as an obstetrician-gynecologist.
The parties were divorced in 1985. At that time, defendant was earning in excess of $100,000 per year from his medical practice, and plaintiff was unemployed. Plaintiff, who had obtained a master's degree from an art school during the marriage, hoped to obtain a position in the field of fine arts.
The settlement agreement incorporated in the judgment of divorce required defendant to pay plaintiff $2,000 alimony per *212 month for a period of ninety-four months. The agreement also provided that "[i]n order for a party to seek a change in the support, the party seeking the change must first make a prima facie showing of their entitlement to a change in the amount of support."
Subsequent to the divorce, plaintiff applied for positions with art galleries, museums, private schools and community colleges. However, she was unable to obtain any permanent position in which she could utilize her education in fine arts. Consequently, plaintiff decided to become a realtor. She worked part time in this field as a "hostess" from 1985 to 1987 while taking the courses required to become licensed. After obtaining her license, plaintiff accepted a position with a real estate brokerage firm in Wilmington, Delaware, where she has remained until the present time. Plaintiff's average net income from this employment during the period from 1989 to 1993 was slightly more than $15,000 per year. Plaintiff and her employer attributed plaintiff's relatively small income to plaintiff's inexperience in the field and to the weakness in the real estate market during the period since plaintiff obtained her license. They also indicated that the market seemed to be stabilizing and that plaintiff could reasonably anticipate that her income would increase in the future.
Shortly before the expiration of the ninety-four month period during which plaintiff was entitled to receive alimony under the judgment of divorce, plaintiff filed a motion to increase alimony and to make defendant's obligation permanent. Based on the evidence presented at a two-day hearing, the Family Part judge found that "the alimony provided ... in the Final Judgment of Divorce was rehabilitative," that while "no rehabilitation plan" had been "presented" at the time of the divorce, there had been "a vague notion of plaintiff's [becoming] economically self-sufficient" by the end of the ninety-four month period, and that "plaintiff's lack of rehabilitation was not a result of her indolence and not as a result of her lack of energy because she has been diligently applying herself towards an end." The judge concluded that there *213 had been "a change of circumstances sufficient to warrant the disclosure of defendant's financial data." The judge then ordered plaintiff to submit a "rehabilitation plan" and ordered both parties to submit current Case Information Statements. The judge further ordered that the matter would be set down for a plenary hearing "on all issues presented by these facts and relevant to alimony." In the interim, the judge extended the period of defendant's $2,000 per month alimony obligation for six months.
After entry of this order, the case was transferred to a different Family Part judge. After a four day hearing, the newly assigned judge issued an oral decision on April 15, 1994, denying plaintiff any relief. The judge expressed the view that under N.J.S.A. 2A:34-23, as amended in 1988, L. 1988, c. 153, § 3, rehabilitative alimony may be modified but cannot be changed into permanent alimony. The judge also expressed the view that a court of equity may have an inherent power to convert rehabilitative alimony into permanent alimony if, for example, the supported spouse was "struck by some unexpected catastrophic illness or disease making it impossible for her or him to continue to work." However, the judge ruled that this power could not be invoked in the present case because "no credible evidence has been presented ... that this woman in her early fifties is incapable of pursuing any career." The judge did not make any finding regarding plaintiff's earning capacity or identify any specific field in which plaintiff could obtain employment that would generate greater income than she was already earning as a realtor. The judge also reaffirmed the finding of the prior trial judge that plaintiff's failure to obtain a position in the field of fine arts was not the result of "any fault or indolence" on her part.
Plaintiff appeals from the denial of her application for an award of permanent alimony. We reverse and remand for a determination of the appropriate amount of permanent alimony.
An award of rehabilitative alimony may be appropriate "where a short-term or lump-sum award from one party in a divorce will enable [the] former spouse to complete the preparation *214 necessary for economic self-sufficiency." Hill v. Hill, 91 N.J. 506, 509, 453 A.2d 537 (1982). "The basic premise of an award of rehabilitative rather than permanent alimony is an expectation that the supported spouse will be able to obtain employment, or more lucrative employment, at some future date." Shifman v. Shifman, 211 N.J. Super. 189, 194-95, 511 A.2d 687 (App.Div. 1986). Thus, rehabilitative alimony is "payable for a terminable period of time when it is reasonably anticipated that a spouse will no longer need support." McGee v. McGee, 277 N.J. Super. 1, 14, 648 A.2d 1128 (App.Div. 1994) (quoting Dotsko v. Dotsko, 244 N.J. Super. 668, 677, 583 A.2d 395 (App.Div. 1990)). Therefore, if the supported spouse is unsuccessful in obtaining the kind of employment required for the economic self-sufficiency anticipated at the time of divorce, "this properly may be viewed as a `changed circumstance' which would justify the continuation of alimony beyond the original termination date." Shifman v. Shifman, supra, 211 N.J. Super. at 195, 511 A.2d 687; see also Strauss v. Strauss, 160 Vt. 335, 628 A.2d 552, 555-56 (1993).
The Family Part judge erred in concluding that the 1988 amendment of N.J.S.A. 2A:34-23 changed these basic principles. The amendment gave explicit legislative recognition to the concept of rehabilitative alimony previously developed by the courts but did not change the concept in any significant respect. In fact, the Legislature expressly recognized that a provision for rehabilitative rather than permanent alimony is not immutable if the supported spouse fails to achieve the economic self-sufficiency anticipated at the time of the divorce, by providing that "[a]n award of rehabilitative alimony may be modified based either upon changed circumstances, or upon the nonoccurrence of circumstances that the court found would occur at the time of the rehabilitative award." N.J.S.A. 2A:34-23 (emphasis added). Since a supported spouse's attainment of economic self-sufficiency is the essential anticipated "circumstance" that a court must find to justify an award of rehabilitative alimony, Shifman v. Shifman, supra, the "nonoccurrence" of that circumstance provides the requisite foundation for a *215 modification of such alimony. Moreover, if events subsequent to the divorce show that it is no longer reasonable to anticipate that the supported spouse will ever become economically self-sufficient, the alimony award should be converted from rehabilitative to permanent.
In this case, the record clearly indicates that plaintiff has been unable to achieve economic self-sufficiency. Plaintiff turned to the sale of real estate as her source of livelihood only after she had vigorously, but unsuccessfully, pursued efforts to secure employment in the field of fine arts. Defendant presented no evidence that there are positions available to a person with a master's degree in fine arts that plaintiff would be able to obtain. Defendant also did not present any evidence that there are other employment opportunities available to a person with plaintiff's education and work experience that would be likely to generate greater income than plaintiff is earning as a realtor.[1] In fact, the only evidence presented on this point was the report of plaintiff's vocational expert, Samuel Goodman, which concluded that plaintiff's age, physical handicaps, and lack of readily transferable job skills, "make her a disadvantaged applicant for consideration as a worker."
Despite the absence of any evidence that there are job opportunities available to plaintiff from which she could derive greater income than she is earning as a realtor, the trial court concluded that plaintiff should "embark upon a new career." However, the court did not indicate what this new career might be, what education or training would be required, where job opportunities might be available, or what income plaintiff could earn. Thus, the court's finding that plaintiff could earn greater income from some unspecified employment outside the real estate field was based on speculation, unsupported by any evidence in the record.
*216 The record also indicates that there is no reasonable likelihood plaintiff will be able to achieve economic self-sufficiency in the future. A supported spouse is generally entitled to continued maintenance at the standard of living enjoyed during the marriage. Innes v. Innes, 117 N.J. 496, 503, 569 A.2d 770 (1990); Lepis v. Lepis, 83 N.J. 139, 150, 416 A.2d 45 (1980). The record indicates that the parties enjoyed a very comfortable, even if not lavish, lifestyle during their marriage. Although it appears likely that plaintiff's income will increase as the real estate market improves and as she gains additional experience and contacts in the field,[2] there does not appear to be any reasonable likelihood she will be able to attain self-sufficiency at the economic level maintained by the parties during the marriage.
We are satisfied that plaintiff's inability to gain such self-sufficiency justifies the conversion of her alimony from rehabilitative to permanent. The parties had a long-term marriage during which plaintiff stayed out of the workforce for a period of twenty years to raise their three children. See N.J.S.A. 2A:34-23(b)(6), (8). Defendant, who now earns in excess of $200,000 per year from his medical practice, has the economic resources both to pay permanent alimony to defendant and to support his new family. See N.J.S.A. 2A:34-23(b)(1), (4), (5). In contrast, plaintiff, who is now fifty-five years old, apparently does not have the ability to gain self-sufficiency, and the less than $75,000 she received as equitable distribution at the time of the divorce generates only a relatively small part of the income required for her support. Our courts have frequently recognized that an award of permanent alimony is appropriate under such circumstances.[3]See, e.g., Khalaf v. Khalaf, 58 N.J. 63, 69-70, 275 A.2d 132 (1971); Cerminara v. Cerminara, 286 N.J. Super. 448, 457-62, 669 A.2d 837, 842-45 *217 (App.Div. 1996); Weber v. Weber, 211 N.J. Super. 533, 537, 512 A.2d 494 (App.Div. 1986).
Plaintiff also argues that the trial court erred with respect to several discovery and evidentiary rulings. We find no abuse of discretion in the court's refusal to order the release to plaintiff of defendant's unredacted personal income tax returns which include personal financial information of his new wife. See DeGraaff v. DeGraaff, 163 N.J. Super. 578, 395 A.2d 525 (App.Div. 1978). Since the case must be remanded for further trial proceedings to determine the amount of permanent alimony, there is no need for us to pass upon plaintiff's other arguments relating to the prior trial proceedings.
Accordingly, we reverse the trial court order denying plaintiff's application for permanent alimony and remand for a determination of the amount of alimony in accordance with the criteria set forth in N.J.S.A. 2A:34-23(b). The award shall be made retroactive to February 1, 1994, when the payment of rehabilitative alimony was terminated.
NOTES
[1] Defendant does not dispute that plaintiff has taken all reasonable steps to maximize her income as a realtor.
[2] We were advised at oral argument that plaintiff's income has increased somewhat during the past two years.
[3] If plaintiff's income were to increase sufficiently for her to become economically self-sufficient, defendant could then move on the basis of changed circumstances to be relieved of his alimony obligation. See Lepis v. Lepis, supra.