710 A.2d 1053

ELAINE J. WASS, PLAINTIFF, v. HOWARD
L. WASS, DEFENDANT.

Superior Court of New Jersey
Chancery Division
Family Part
Monmouth County

Decided February 17, 1998.

*Brian P. Latimer,* for plaintiff (*Jacobowitz, Grabelle, Defino, McGoughran & Latimer,* attorneys).

*Robert B. Woods,* for defendant (*Robert B. Woods,* attorney).

HAYSER, J.T.C., temporarily assigned.

Plaintiff in this action seeks an award of rehabilitative alimony. Although not argued by the plaintiff at trial, must the court, in the alternative, under the facts and circumstances of this case, consider an award of permanent alimony if rehabilitative alimony is not appropriate? [1]

The essential facts are not in dispute. Plaintiff left high school in the tenth grade. She worked for a manpower training program as a switchboard operator for one year. She married for the first time in 1976, and gave birth to her first child in 1977. That child is now emancipated.

In 1981, the plaintiff met the defendant, and, before her divorce from her first husband in 1983, the parties began living together. At that time, the plaintiff was, at best, sporadically or seasonally employed as a waitress, Avon and Amway representative and as a secretary, with a temporary employment agency. At the same time, defendant was beginning his career in the construction industry, initially earning less than $15,000.00 per year.

In December 1986, the parties' child was born, and thereafter the parties married in February 1987. The parties apparently agreed that the plaintiff would not seek further employment until

---

[1] In her complaint, filed June 27, 1996, plaintiff sought unspecified alimony. Defendant has not previously been required to provide spousal support, although by court order entered January 31, 1997, he was required pendente lite to pay 80% of the roof expenses for the marital residence, where the plaintiff and the parties' child continue to reside.

their child began attending school full-time. However, prior to the commencement of this action, plaintiff was temporarily employed at a nursery school and as a secretary for an eye doctor. Plaintiff was also temporarily employed as the manager of a mall kiosk business and as a Macy's seasonal salesperson.

Presently, plaintiff is employed full-time at Lord & Taylor, earning approximately $7.45 per hour, and working a thirty-eight (38) hour week, with a resulting gross weekly salary of $283.00, or an annual gross salary of approximately $14,721.00. Defendant continued his employment in the construction field, earning a gross salary and bonus in 1997 of $54,878.00, which did not include approximately $1,200.00 of additional income which he earned in that same year for "occasional" carpentry jobs.

Twice in recent years the plaintiff made unsuccessful attempts to obtain her GED certificate. Plaintiff is forty years of age. She now seeks rehabilitative alimony to permit her to attend Brookdale Community College in order to obtain her GED, through a basic skills test and remedial courses, and, thereafter, complete a business office certification program, involving twenty-three (23) credits at a cost of $85.00 per credit. Plaintiff expects this program to prepare her to be employed as a secretary with requisite skills. She has had limited previous experience as a secretary. She expects to complete the program in three years.

Plaintiff seeks a rehabilitative alimony award of $250.00 per week for a period of seven (7) years. Defendant argues that plaintiff is in fact seeking impermissible term alimony, that she is presently employed full-time, earning $7.45 per hour, and has demonstrated no concrete desire or plan to better her employment situation.[2]

---

[2] From her weekly gross salary of $283.00, in addition to regular federal and state tax deductions, plaintiff pays $34.71 per week for medical and vision coverage for herself, and dental coverage for the parties' daughter. Although defendant was required to provide health insurance coverage for the plaintiff and the child under a December 6, 1996 pendente lite court order, his medical plan apparently, at the least, does not provide dental coverage.

Rehabilitative alimony was first substantially sanctioned in *Turner v. Turner*, 158 *N.J.Super.* 313, 385 *A.*2d 1280 (Ch.Div.1978), and although not lacking objection (see, *Arnold v. Arnold*, 167 *N.J.Super.* 478, 401 *A.*2d 261 (App.Div.1979)), was recognized, at least implicitly, in *Lepis v. Lepis*, 83 *N.J.* 139, 155, 416 *A.*2d 45 (1980).[3]

Moreover, the Family Part has long been authorized "... [p]ending any matrimonial action ... or after judgment of divorce ... [to] make such order as to the alimony or maintenance of the parties ... as the circumstances of the parties and the nature of the case shall render fit, reasonable and just ..." *N.J.S.A.* 2A:34–23. The Legislature in 1988 explicitly recognized the concept of rehabilitative alimony but did not significantly change the common law concept as it has developed. *Milner v. Milner*, 288 *N.J.Super.* 209, 214, 672 *A.*2d 206 (App.Div.1996).

 "The basic premise of an award of rehabilitative rather than permanent alimony is an expectation that the supported spouse will be able to obtain employment, *or more lucrative employment,* at some future date." *Shifman v. Shifman*, 211 *N.J.Super.* 189, 194–95, 511 *A.*2d 687 (App.Div.1986) [emphasis added]. Effectively, rehabilitative alimony is term alimony payable for a reasonable period of time, beyond which it is anticipated such support will no longer be needed. *Dotsko v. Dotsko*, 244 *N.J.Super.* 668, 677, 583 *A.*2d 395 (App.Div.1990).

---

[3] In its report issued in July 1981, the Supreme Court Committee on Matrimonial Litigation, Phase Two, cited with approval 3 *Western N.E.L.Rev.* 127, 132–33 (1980):

> The primary goals of rehabilitative alimony ... are to reduce post-divorce recourse to the courts, to provide the supporting spouse with some degree of certainty as to the nature and extent of the support obligation owed to the former spouse, and to encourage a supported spouse to develop employment skills within a precise period of time so as to become self-supporting. [Supplement to N.J.L .J., July 16, 1981, 14].

See, also, *Hill v. Hill*, 91 *N.J.* 506, 509, 453 *A.*2d 537 (1982).

■ Moreover, the essential purpose of alimony is the continuation of the standard of living enjoyed by the parties prior to their separation. *Mahoney v. Mahoney,* 91 *N.J.* 488, 501–02, 453 *A.*2d 527 (1982). Specifically, in this regard, the factors that must be considered include "the dependent spouse's needs, that spouse's ability to contribute to the fulfillment of these needs, and the supporting spouse's ability to maintain the dependent spouse at the former standard." *Lepis, supra,* at 152, 416 A.2d 45.

■ Nevertheless, the ultimate purpose of rehabilitative alimony, whether the subject of a voluntary agreement or otherwise, is to help produce a self-sufficient individual, benefiting not only the recipient of the alimony, but the person paying the alimony. *Avirett v. Avirett,* 187 *N.J.Super.* 380, 454 *A.*2d 917 (Ch.Div.1982), *overruled on other grounds, Shifman v. Shifman,* 211 *N.J.Super.* 189, 511 *A.*2d 687 (App.Div.1986). Finally, in reaching its decision as to any award for alimony, the trial court must fully and specifically articulate findings of fact and conclusions of law in support of its decision. *Heinl v. Heinl,* 287 *N.J.Super.* 337, 347, 671 *A.*2d 147 (App.Div.1996).

Specific consideration must be given, therefore, to the relevant statutory factors set forth in *N.J.S.A.* 2A:34–23(b):

1. *The actual need and ability of the parties to pay.* Plaintiff is employed as a full-time sales person, whose income potential is limited, for which she presently receives $14,721.00, and has to contribute for her own and a portion of their child's medical insurance coverage. Defendant, who apparently has experienced some lean years, economically, has greater income potential, and presently earns in excess of $55,000.00, even with a separate existing child support obligation of $25.00 per week.[4] The plaintiff has submitted her Case Information Statement (CIS), in which she alleges total monthly expenses in the approximate amount of $2,795.00. Having reviewed this CIS, the court finds that plaintiff has reasonable monthly expenses of $2,351.00. Defendant alleges on his CIS that he has monthly expenses for himself and his personal residence of $1,964.50. The court finds that after certain reasonable deductions from this amount, defendant has reasonable monthly expenses of $1,500.00. Therefore, it

---

[4] It is also noted that the parties share certain living and medical expenses, proportional to their respective incomes-plaintiff paying 20% and defendant paying 80%.

is clear that the plaintiff has some degree of shortfall in her monthly net income vis a vis her reasonable expenses, and that the defendant has some degree of surplus.

2. *The duration of the marriage.* The parties were married for nine (9) years at the time of their separation, but had apparently lived together for six (6) additional years, for a total of fifteen (15) years. See, *McGee v. McGee,* 277 *N.J.Super.* 1, 14, 648 *A.*2d 1128 (App.Div.1994); *Heinl, supra,* at 348, 671 *A.*2d 147.

3. *The age, physical and emotional health of the parties.* Plaintiff is forty (40) years of age and defendant is thirty-seven (37) years of age. Both appeared at trial in reasonable physical and emotional good health.

4. *The standard of living established in the marriage and the likelihood that each party can maintain a reasonably comparable standard of living.* It is undisputed that the "standard of living" during the entire relationship of these parties has substantially been defined by the defendant's progression in income. While it would be impossible under the facts of this case for these parties to truly maintain the status quo as to their, now, separate living arrangements, given their income potential, the burden would have to be more equalized to offer the possibility of even a reasonably comparable standard of living for both. Simply stated, an annual salary of $14,000.00, with limited possibility for growth, cannot be equated to an income of $56,000.00 per annum, with potential for growth, and maintain for the parties the reality of any "reasonably comparable standard of living."

5. *The earning capacities, educational levels, vocational skills, and employability of the parties.* The factual background earlier discussed, clearly demonstrates the present superior position of the defendant, at least in terms of earning capacity, vocational skills and employability.

6. *The length of absence from the job market and the custodial responsibilities of the party seeking maintenance.* It cannot be seriously disputed that as an adult, the plaintiff has largely been absent from the job market, and during the marriage had the significant custodial responsibilities for the parties' child, now age eleven (11).

7. *The history of the financial or non-financial contributions to the marriage by each party including contributions to the care and education of the children and interruption of personal careers or educational opportunities.* It is also clear, as discussed, that the significant financial contributions to the marriage were made by the defendant, with the plaintiff's contribution of a non-financial nature largely limited to those of the homemaker and caregiver for the parties' child. She rendered these services during the marriage, as apparently was the parties' understanding, during a time when if she were solely responsible for her own maintenance, she would have had to lay the foundation for her future financial security. At her present age, the plaintiff must, perhaps, begin such preparation, having essentially had no career or significant prior training or education.[5]

---

[5] There is little to be factored into this analysis as to the issue of alimony in terms of the limited equitable distribution between the parties, principally

It must be acknowledged that the cited statute sets forth the same factors for a court to "award permanent or rehabilitative alimony or both to either party." *N.J.S.A.* 2A:34–23(b). Indeed, the utilization of the word "both" in the context of the 1988 amendment, which formally recognized, legislatively, that rehabilitative alimony may be available to parties, offers the rare, yet intriguing, possibility that even a party capable of retraining under a temporary alimony scenario might still be entitled to some permanent alimony to finally maintain a comparable standard of living as experienced during the marriage.[6]

The utilization of the same statutory factors, and their juxtaposition together, for determining both rehabilitative and permanent alimony cannot be considered an idle coincidence. *Chase Manhattan Bank v. Josephson,* 135 *N.J.* 209, 638 *A.*2d 1301 (1994); *Zimmerman v. Municipal Clerk of Berkeley Tp.,* 201 *N.J.Super.* 363, 493 *A.*2d 62 (App.Div.1985).

In *McGee v. McGee, supra,* the parties began their relationship in 1981, from which point the plaintiff financially supported the defendant, the defendant having given up her job. In 1983, the parties moved in together, became engaged and cohabitated, except for a 1984 separation, through their marriage in 1989, and until 1991. The defendant argued to the trial court that this was a permanent alimony case. To the contrary, the plaintiff argued it was not an alimony case at all.

---

consisting of the sale of the marital residence. Moreover, as earlier noted, the defendant is presently responsible for 80% of the roof expenses pursuant to *pendente lite* order in this matter.

[6] In *Milner v. Milner,* 288 *N.J.Super.* 209, 672 *A.*2d 206 (App.Div.1996), the rehabilitative alimony was converted to a permanent alimony award due to the inability of the plaintiff to achieve economic self-sufficiency. However, it is suggested that the statutory language is somewhat broader and may be utilized through a combination of alimony approaches to achieve, finally, economic self-sufficiency, recognizing that rehabilitative alimony may only be of limited but nevertheless some use in achieving that goal.

In conclusory language, the trial court ordered six months of rehabilitative alimony at $750.00 per month. In reversing the lower court's decision, the Appellate Division remanded the matter for full consideration of both the issues of rehabilitative and permanent alimony, stating:

> While this was not a lengthy marriage, "[t]he extent of actual economic dependency, not one's status as a wife [or husband] must determine the duration of support as well as its amount." Courts must consider the duration of the marriage in awarding alimony. *N.J.S.A.* 2A:34–23. However, the length of the marriage and the proper amount or duration of alimony do not correlate in any mathematical formula. Where the circumstances of the parties diverge greatly at the end of a relatively short marriage, the more fortunate spouse may fairly be called upon to accept responsibility for the other's misfortune—the fate of their shared enterprise. [*Lynn v. Lynn*, 91 *N.J.* 510, 517–18, 453 *A.2d* 539.]
>
> [*McGee v. McGee, supra,* 277 *N.J.Super.* at 14, 648 *A.2d* 1128.[7]]

In *Heinl v. Heinl, supra,* 287 *N.J.Super.* 337, 671 A.2d 147, the parties separated after a marriage of eight (8) years. Plaintiff, a high school graduate, was also a graduate of a secretarial school, and worked full-time prior to the birth of the parties' older child, and had recently returned to such part-time employment. Plaintiff was thirty-five years of age. The trial court determined, again largely in conclusory fashion, that the plaintiff was entitled to permanent alimony in the amount of $125.00 per week. In reversing the trial court's decision, the Appellate Division stated:

> ... Although we note that the defendant here did not urge the trial court to award rehabilitative alimony, defendant did urge that alimony in any form should be denied. In rejecting defendant's position, the judge was therefore obligated to fully articulate his reasons for granting permanent alimony. That reasoning process necessitates a consideration of rehabilitative alimony, and where appropriate, an articulation of reasons for rejection of rehabilitative alimony and an award of permanent alimony. *McGee, supra,* 277 *N.J.Super.* at 14, 648 *A.2d* 1128.

---

[7] The parties in *McGee* has an overall relationship of shorter duration than those in the present matter. However, defendant may argue that while Mrs. McGee was a fifty-seven-year-old woman with "mild medical problems," *Id.* at 5, 648 A.2d 1128, the present plaintiff is a forty-year-old woman with no denoted health problems. Although Mrs. McGee graduated from high school, the subsequent employment of both women was sporadic and temporary. However, as will be discussed further, the present plaintiff, unlike Mrs. McGee, is seeking only rehabilitative alimony.

[*Id.* at 348, 671 *A.*2d 147.]

■ The issue discussed in *McGee* and *Heinl* goes beyond the duty of the trial court to made findings of fact and articulate reasons for the conclusions it reaches. *R.* 1:7–4. The trial court is required, more significantly, to evaluate the alimony issue on the basis of both a rehabilitative term and a permanent award, or even if alimony should be awarded at all.

This is not to suggest in the instant case that an award of permanent alimony would be inappropriate. Plaintiff's limited education and employment experience, as well as the limited potential of her present employment, argues for such an award arising from a long-standing economically dependent relationship. Even her age, given that she might be at the outer limits of a training or education curve, supports such an award. Under *McGee* and *Heinl,* the court would certainly have to consider such an award.[8]

Yet, plaintiff has finally chosen at trial to waive a claim for permanent alimony, unlike the recipient party in *McGee* and *Heinl.* It is certainly her right to knowingly and voluntarily waive various claims for relief. *Petrillo v. Bachenberg,* 263 *N.J.Super.* 472, 623 *A.*2d 272, *certif. granted* 134 *N.J.* 566, 636 *A.*2d 523, *aff'd.* 139 *N.J.* 472, 655 *A.*2d 1354 (1995); *Teltsher v. City of Orange,* 7 *N.J. Tax* 287 (1985).

This brings the discussion to another factor to be considered in determining as to the alimony issue under *N.J.S.A.* 2A:34–23(b)— "any other factors which the court may deem relevant." Ultimately, the court must decide, as to the issue of a possible alimony

---

[8] Defendant may argue that the plaintiff having waived at trial a permanent alimony claim, any further consideration of that issue would be unwarranted. This ignored the court's ultimate jurisdiction to determine under *N.J.S.A.* 2A:34–23, an alimony award that would be, indeed, "fit, reasonable and just." Moreover, depending upon the proofs developed at trial, the result would be no different than that provided for under *R.* 4:9–2, as to permitted pleading amendments conforming to the evidence presented. Here, however, the complaint sought unspecified alimony.

award, what would be "fit, reasonable, and just." *N.J.S.A.* 2A:34–23. However, in reaching its conclusion, the court must consider all relevant factors.

■ In the category of "relevant factors" must be the reasons, freely and persuasively presented, as to what a party is seeking through an award of alimony. At trial, the plaintiff acknowledged in her testimony that while she possessed "no skills that are going to get me anywhere," nevertheless she repeatedly stressed that it was important for her, personally, "to better my life . . . not to be on the street." Rarely is the expression to be independent of spousal support heard in an action for alimony.

Should the court give substance and meaning to such sentiments? Where there is a reasonable basis, the court has concluded that this factor should be given the same consideration as any other factor. Defendant argues, however, that plaintiff's sentiments are not worthy of consideration, that she has no plan for rehabilitation, and that her goals, at best, are speculative and are only designed to gain, improperly, temporary financial support.

Nevertheless, if the situation is that hopeless, if the plaintiff is truly incapable of retraining, and her future income will mirror her present, does it not make the case, as discussed, for an award of permanent alimony? Otherwise, how do we achieve the essential purpose of continuing the standard of living, as closely as possible, that the parties enjoyed prior to their separation? *Mahoney v. Mahoney, supra,* 91 *N.J.* at 501–02, 453 *A.*2d 527.

Successful rehabilitative alimony can establish, maintain or restore the pride of economic self-sufficiency and relieve the paying spouse of a financial burden that otherwise may be permanent. Public policy may also be served to avoid a party becoming a public charge. Indeed, alimony should continue only so long and in such amount as is necessary to reasonably maintain the standard of living the parties might have continued to enjoy in an intact relationship, wherein each made his or her respective financial and non-financial contributions.

This, finally, brings the discussion to the last factor to be considered in determining as to an alimony award under *N.J.S.A.* 2A:34–23(b)—"[t]he time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, the availability of the training and employment, and the opportunity for future acquisitions of capital assets and income." This is uniquely a factor to be considered in evaluating and determining an award of rehabilitative alimony.

Plaintiff is not a high school graduate. She has failed twice on her own in recent years to achieve her GED certificate. It can not seriously be argued that her present sales position offers her the realistic prospect of either substantial economic or long-term security. It is as much a factor of the future standing of her employer as her own ability to stand for long hours.

Her plan, as she testified, is to enroll in a program provided by Brookdale Community College, which program has two features. The first involves the taking of a basic skills test to determine what remedial courses she may need to complete to then successfully take her GED exam. Once having completed the first phase, then she would be enrolled in a non-degree program for twenty-three credits to receive a certificate of office assistant, which would train her in modern office procedures as a secretary, a position that she has previously held, sporadically, with rudimentary knowledge. No cost figures, if any, were presented as to the first phase. Each credit hour of the second phase would be charged at $85.00 per hour. No time frame was presented as to the completion schedule of the first phase, and she stated there would be approximately six credit courses for the second phase that she would like to take at the rate of one course per semester in order not to conflict with her full-time employment needs and parental responsibilities.

Defendant would argue that there is no guarantee that even if plaintiff was to complete this program, that she would then achieve employment that is more financially rewarding. Defen-

dant would also contend that if the rehabilitative alimony did not achieve the desired result, it could "open the door" to a possible permanent alimony award. *See, Milner, supra.* However, these concerns truly beg the question, when we have a situation here that, on the facts, can now support an award of permanent alimony. The court has concluded that on balance, the plaintiff has presented a reasonable plan to attempt financial independence.

However, that is not to say that there are no flaws in plaintiff's request. She seeks an award of rehabilitative alimony of $250.00 per week for seven (7) years, but provides the court with no credible evidence to support such an extended award.

Nevertheless, the court has concluded that for the reasons already discussed, under the relevant statutory factors to be considered, an award of rehabilitative alimony is appropriate in this case. Even if it achieves only permanent employment at the same salary level as present, it may lessen the need for future applications for modification based upon "changed circumstances." It is in the interests of both parties to attempt this goal, and is as realistic, perhaps, as seeking employment in the field of fine arts, at age fifty-five, armed only with a masters in fine arts degree. *Milner, supra.*

However, the court has reviewed the temporary support award as requested by the plaintiff. Plaintiff claims monthly expenses for her and the child for whom she is the custodial parent, of $2,795.00, to which the court has made what it feels are reasonable adjustments to reduce the monthly expenses to $2,351.00. Factoring in plaintiff's net monthly salary of $898.70, it would leave a monthly deficit of $1,452.30, or $337.74 per week. The court has concluded that a weekly spousal support award of $250.00, coupled with child support in the amount of $118.84, would be appropriate in this case.[9] This would also leave the defendant with a weekly

---

[9] The court has separately calculated child support in accordance with the established Child Support Guidelines, appearing as Appendix IX of the Rules of Court.

net of $395.00, which would meet his reasonable weekly expenses of $348.84.

As to the duration of this alimony award, there is no reason why the plaintiff could not complete her GED requirements and achieve the desired office assistant certificate in eight regular semesters, while seeking, simultaneously, appropriate employment, whether or not she is aided in placement by the program in which she participates. Finally, her failure to undertake and complete the program diligently and in good faith would be a factor in evaluating any future permanent alimony application base upon "changed circumstances."

Therefore, plaintiff is awarded rehabilitative alimony in the amount of $250.00 per week for a period of four years from the date of entry of a finalized order in this matter.