191 N.J. Super. 609 (1982)
468 A.2d 733
RUTH E. KULAKOWSKI, PLAINTIFF,
v.
RONALD A. KULAKOWSKI, DEFENDANT.
Superior Court of New Jersey, Chancery Division Somerset County.
Decided September 15, 1982.
*610 R.M. James Ruscick for plaintiff.
Warren, Goldberg & Berman for defendant (Bruce Lubitz appearing).
IMBRIANI, J.S.C.
"Rehabilitative alimony" was adopted in Lepis v. Lepis, 83 N.J. 139 (1980), which said:
... the extent of actual economic dependency, not one's status as a wife, must determine the duration of support as well as its amount [and t]he need for support must be assessed with a view towards the earning capacity of the individual woman in the marketplace. [at 155-156]
The questions here are two-fold. First, is rehabilitative alimony to be in lieu of or in addition to permanent alimony? And, second, when educational expenses are necessary and feasible to *611 qualify a woman for the employment she desires, how should their costs be defrayed?
As stated in Turner v. Turner, 158 N.J. Super. 313, 314 (Ch.Div. 1978):
... rehabilitative alimony [is] payable for a short, but specific and terminable period of time [and] will cease when the recipient is, in the exercise of reasonable efforts, in a position of self-support.
In Turner permanent alimony was denied because at the expiration of an 18-month rehabilitative period the total expected income of the wife "will adequately satisfy her needs and enable her to maintain the style of living to which she is accustomed." (At 325)
But if at the conclusion of the rehabilitative period a wife cannot reasonably be expected to earn sufficient income to enable her to maintain the same style of living "to which she is accustomed," should she also be awarded permanent alimony? (The female gender will be used throughout for ease of explanation.) The purpose of rehabilitative alimony is to exert fair and compassionate pressure upon a wife, absent unusual circumstances, to develop marketable skills and obtain employment which will enable her to contribute, in whole or in part, to her support.
But clearly, when a woman has been a homemaker for many years and is compelled to obtain employment in the marketplace, she is often unable to earn sufficient income to enable her to maintain the same style of living to which she became accustomed during coverture when she had access to the income of her husband. No matter how many courses she takes or how much experience she acquires, her earnings often will be insufficient to enable her to do so. Following a divorce after a lengthy marriage she simply does not possess the skills, business contacts and confidence needed to earn a salary comparable to that of her husband, who had the opportunity and time during coverture to develop these talents. Under these circumstances it would be unfair and unjust to compel her at the conclusion of a rehabilitative period to live solely from her earnings, while the *612 husband enjoys the full fruits of the talents he acquired, in substantial part, during the marriage. For these reasons both rehabilitative and permanent alimony may, where appropriate, be awarded. This case rather saliently demonstrates an exigent situation.
These parties were married for 18 years and had three children, ages 17, 15 and 9 years. When the complaint was filed the husband had annual earnings of $49,500, but during the pendency of this action he joined another company and now receives an annual salary of $52,000, a guaranteed minimum annual bonus of $10,000, a company-owned and maintained automobile, and a $2,000 monthly expense account. His total income, including perquisites, now exceeds $90,000 a year.
On the other hand, the wife whose premarriage nonhousehold skills have diminished, if not vanished, is now compelled to enter the business world. As noted by Turner and Lepis, this will inure to her ultimate physical and emotional well being, especially following the turmoil and distraction of a divorce. But surely no one can reasonably expect her to earn a salary commensurate with that of her husband. She was accustomed to a living standard which an annual salary of $49,500 permitted, and it is difficult to conceive how she will ever be able to earn anywhere near that sum. Clearly, it would be grossly unfair and inequitable to compel her to live a reduced lifestyle commensurate with her anticipated limited earnings, while her husband is permitted to enjoy a substantially enhanced style of living due, in part, to increased income resulting from the skills, business contacts and confidence he acquired during their marriage while she was caring for his home and children.
The wife expressed a desire to become a hair stylist, an avocation in which she was never employed. She wants to attend school for one year at a cost of $3,800 and indicated she would need an additional two years thereafter to hone her skills. Should the $3,800 be paid from her share of the marital assets, from her income, or from all of the marital assets before equitable distribution?
*613 While the husband obviously had some talents prior to his marriage, it would appear to be manifest that a person who is employed as vice-president of sales and marketing developed most of his skills, contacts and confidence during the 18 years he was married. And since he was able to do so within the penumbra of the marriage, she should be entitled to do likewise with the financial assets accumulated during that union. Accordingly, she shall receive from the marital assets before they are equitably distributed the full cost of her schooling.
Until the wife can offer herself to the public as an experienced hair stylist in about three years she will need alimony. In the first year while attending school she will be unable to work and during the next two years she can only expect to earn the pay of an apprentice. Obviously it is difficult to predict what she will be earning in three years. But as with so many tasks imposed upon the trier of the facts, it is not impossible to make reasonable estimates. Fixing monetary awards often requires predictions of future events or costs, be they future salary losses, future damages due to a physical injury or any one of many other similar situations. And here, unlike many other cases, if egregiously inaccurate, application can always be made to the court to correct a manifest injustice.
When considering her needs and the income she will earn from investing the marital assets which she will receive by way of equitable distribution, she will need during the next three years alimony of $1,100 a month to enable her to maintain the same style of living to which she became accustomed during the marriage. (Her husband will contribute substantially to the support and education of the children.) When she attains her full earning capability in three years and two of the three children will be either emancipated or enter college (the costs of which are to be borne by the husband), her permanent alimony needs should decline to $750 a month. At that time we can reasonably assume that she will earn approximately $15,000 a year, which together with permanent alimony of $9,000 a year, will provide her with $24,000 a year, excluding some interest *614 income, and will enable her to live in the same style she enjoyed during coverture. Accordingly, she shall be awarded permanent alimony of $750 a month and rehabilitative alimony of $350 a month for three years.
While it is true that in three years her salary should be greater than the $350 a month by which total alimony will decline, it must be appreciated that (1) her expenses will increase as the result of expected inflation, (2) the husband's income, which has recently risen rather dramatically, can reasonably be expected to continue to rise, and (3) his net alimony expense will be moderate since he is in a high tax bracket and his payments will be deductible for federal income tax purposes. Under these circumstances, whatever salary she can earn in excess of $350 a month should inure to her benefit. The husband will have remaining more than sufficient income to enable him to live very comfortably and certainly at least equal with his past style of living.