722 A.2d 977 (1999)
318 N.J. Super. 34
Mark D. CARTER, Plaintiff-Appellant,
v.
Karen L. CARTER, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted December 1, 1998.
Decided February 3, 1999.
*978 Robert Musto, Woodbridge, for plaintiff-appellant (Anthony M. DeBari, New Brunswick, on the brief).
Respondent's brief suppressed.
Before Judges PRESSLER, BROCHIN, and KLEINER.
The opinion of the court was delivered by KLEINER, J.A.D.
Plaintiff Mark D. Carter appeals from an amended order granting permanent alimony to his former wife, defendant Karen L. Carter, on defendant's motion filed more than two years subsequent to plaintiff's final payment of rehabilitative alimony. See N.J.S.A. 2A:34-23b. After a plenary hearing, the motion judge granted defendant's motion seeking an award of permanent alimony and an increase in child support memorialized in an order dated May 1, 1997. Thereafter both parties sought reconsideration. Based upon the respective cross-motions, the judge modified the provision of the May 1, 1997, order pertinent to child support, but denied plaintiff's reconsideration motion pertinent to the award of permanent alimony.[1] Plaintiff appeals solely from the provision of the amended order, memorialized August 19, 1997, requiring the payment of $165 per week as permanent alimony. For the reasons discussed, we reverse and remand for reconsideration of the provision of the judge's decision granting permanent alimony to defendant.

*979 I
The parties were married on August 24, 1979. Their only child, a son, was born on October 26, 1981. The parties separated on April 3, 1988. Prior to the parties' separation, defendant was employed part-time and earned approximately $183 per week. After the separation, defendant secured other employment as a secretary earning approximately $310 per week.
Even after the parties had separated, they continued to socialize. On May 27, 1989, defendant was a passenger on a motorcycle operated by plaintiff. They were involved in a collision with another vehicle and both plaintiff and defendant sustained injuries.[2] Defendant sustained a fracture of the scapula, several rib fractures, chipped teeth, an ankle sprain, and an injury to a knee which ultimately required two separate surgical procedures.
Defendant was still under active medical treatment on November 30, 1990, and was thus unemployed when the parties executed a property settlement agreement which resolved all issues of equitable distribution of property, child custody, child support and visitation, and spousal support. The typed agreement contains numerous handwritten delineations and modifications. Each delineation or rewritten term was separately initialed by each party.
Under the terms of their agreement, the parties agreed to a joint custodial arrangement and named defendant as the primary residential custodian of their son. Plaintiff secured liberal parenting time including overnight visitation and undertook the obligation to pay child support, to maintain health insurance, and to reimburse defendant fifty percent of all uninsured medical and dental expenses incurred on behalf of their son. Each parent agreed to maintain a $50,000 life insurance policy naming their son as irrevocable beneficiary. The parties agreed that each would pay fifty percent of their son's education expenses including college.
Plaintiff agreed to convey his interest in the marital home to defendant subject to an existing first mortgage and to assume full responsibility for the payment of a home equity loan and to hold defendant harmless as to that debt.[3] Plaintiff retained title to a 1988 Kawasaki motorcycle and a 1981 Datsun automobile, and defendant retained title to a 1981 Chevrolet automobile. Each party assumed sole responsibility for any outstanding loan constituting a lien on their respective motor vehicles. Plaintiff was to receive title to a mobile home and trailer but agreed to pay defendant a sum certain whenever the trailer was sold. Plaintiff agreed to pay defendant "50% of all monies in his annuity plan through IBEW Local covering the accumulation period from 8/24/79 through 9/1/89. Wife shall have no interest in any such annuity earned ... after 9/1/89...."
Two provisions of the agreement are especially pertinent to this appeal:
7. The Husband agrees to pay to the Wife $165.00 per week rehabilitation alimony for three (3) years from the date of this agreement.
...
12. Except as otherwise herein expressly provided, the parties shall and do hereby mutually remise, release, and forever discharge each other from any and all suits, actions, debts, claims, demands, and obligations whatsoever, both in law and in equity, that either of them ever had, now has, or may hereafter have against the other or by reason of any matter, cause or thing up to the date of the execution of this agreement, except for the action for personal injury pending from the accident on or about May 29, 1989. Parties agree settlements or verdicts shall not be grounds for change of circumstances on *980 child support or alimony during the next three (3) years.[4]
A judgment of divorce was entered January 4, 1991. The written agreement between the parties was incorporated within the terms of the divorce judgment.[5] The judge who presided at the divorce proceeding only considered testimony pertinent to the causes of action for the divorce and pertinent to his conclusion that the written agreement represented the voluntary act of each party after each had consulted with counsel. The judge did not elicit any testimony pertinent to the provisions within the agreement respecting the payment of rehabilitative alimony.
On December 15, 1995, defendant filed a motion returnable January 19, 1996. Defendant sought a permanent reinstatement of alimony in the amount of $165 per month, a re-evaluation of child support, an order compelling plaintiff to file an updated case information statement, and counsel fees and costs. In defendant's certification, she contended, among other things, that she had been unemployed as of the date of the separation agreement but thereafter, while recuperating from the injuries sustained in the motorcycle collision, enrolled as a student at the Sitone Institute to become a court reporter. She had not been gainfully employed since the date of the motorcycle collision. Furthermore, because of knee surgery following the collision, she had been declared permanently disabled by the Social Security Administration and was awarded, effective May 23, 1995, $530 per month as permanent disability. The parties' son had been awarded $253 per month by virtue of defendant's disability.[6] She further contended that her permanent disability had caused her to withdraw from court reporting school. Defendant also certified that her personal injury claim had been settled for $250,000, but netted her $43,000 after a deduction of attorney's fees and the payment of unreimbursed medical expenses.[7] Defendant also certified that she had utilized the entire net settlement to defray her living expenses once her rehabilitative alimony payments ceased, as well as to satisfy additional claims of medical providers.
In response to defendant's motion, plaintiff denied any responsibility to pay alimony and filed a cross-motion seeking a reduction in his child support payments. The primary thrust of plaintiff's response to defendant's permanent alimony claim was his contention that defendant had agreed to rehabilitative alimony and that he had fully complied with the provisions of the separation agreement, having paid the entire sum required as rehabilitative alimony. The motion judge scheduled a plenary hearing.
At the conclusion of the plenary hearing the judge granted defendant's alimony claim and granted plaintiff's cross-motion seeking a reduction in child support. As noted, after *981 an order memorializing this decision was executed, each party by separate motion sought reconsideration. The original order reducing plaintiff's child support obligation was recomputed and an amended order was entered. All other requested relief was denied to both parties. It is from the amended order that plaintiff appeals.[8]

II
N.J.S.A. 2A:34-23b provides, in pertinent part:
In any case in which there is a request for an award of rehabilitative alimony or permanent alimony, the court shall consider and make specific findings on the evidence about the above factors.

An award of rehabilitative alimony may be modified based either upon changed circumstances, or upon the nonoccurrence of circumstances that the court found would occur at the time of the rehabilitative award.

[emphasis added.]
We consider the statutory mandate that the court make specific findings on rehabilitative alimony as a clear direction to the Family Part that it must adhere to the statutory requirement in every case, whether contested or uncontested, including those cases which result in a settlement on the day of trial or during a trial. We previously stressed the importance of adherence to the statutory admonition in our discussion in Cerminara v. Cerminara, 286 N.J.Super. 448, 459, 669 A.2d 837 (App.Div.1996). We adhere to our view that N.J.S.A. 2A:34-23b must be addressed in every dissolution proceeding where rehabilitative alimony will be paid subsequent to the dissolution of a marriage.

III
In considering the merits of plaintiff's appeal, we first observe that the motion judge was at a disadvantage because the trial judge who granted this divorce failed to adhere to the statutory mandate of N.J.S.A. 2A:34-23b providing in part, "[T]he court shall consider and make specific findings on the evidence" about the request for an award of rehabilitative alimony. Here, the parties negotiated the rehabilitative alimony provision as a component of their property settlement agreement, and the trial judge merely incorporated the property settlement agreement within the divorce decree. The record of the divorce proceeding reflects that the judge did not consider any testimony as to the specific intent of either party regarding rehabilitative alimony. The judge did not explore the reasons for rehabilitative alimony or defendant's rehabilitation goal which the parties sought to accomplish during the three-year rehabilitative period. Additionally, the property settlement agreement as executed was silent on the parties' intent as to reasons why rehabilitative alimony would be paid by plaintiff to defendant and whether the parties contemplated that rehabilitative alimony might be extended beyond the agreed term or converted to permanent alimony in the event the parties' rehabilitative plan was not achieved during the initial rehabilitative period. Nor did it relate plaintiff's rehabilitative alimony obligation to the standard of living of the parties or, more particularly, defendant's standard of living during the marriage.
When considering defendant's application for permanent alimony at the plenary hearing on January 22, 1997, in the absence of any testimony at the divorce proceeding and in the absence of any terms within the parties' separation agreement pertinent to the purpose of rehabilitative alimony or respecting the standard of living of the parties or particularly the defendant's standard of living, the motion judge drew conclusions based upon inferred intent of the parties as to the need for rehabilitative alimony and also drew a conclusion as to the standard of living of the parties from their circumstances on the date their agreement was executed, November 30, 1990.
The absence of testimony on the issue of rehabilitative alimony at the divorce proceeding places a motion judge presiding at a subsequent change of circumstances hearing *982 at a disadvantage in reconciling the needs of the respective parties as of the date of the change of circumstances motion with the needs of the respective parties as of the date of the divorce. See Lepis v. Lepis, 83 N.J. 139, 150, 416 A.2d 45 (1980) (stressing the importance of determining the respective needs and intentions of the parties as of the date of the earlier agreement).
When granting rehabilitative alimony or in approving a rehabilitative alimony provision where rehabilitative alimony is a negotiated term of a property settlement agreement, the trial judge must inquire of each party as to the parties' understanding of the rehabilitative alimony obligation. This is particularly necessary where one or both of the parties may wrongfully believe that the obligation to pay alimony will end at the conclusion of the rehabilitative period. A probing inquiry at the time the marriage is dissolved will be of utmost assistance to any other judge who may be called upon to consider a motion for modification of rehabilitative alimony. The initial inquiry will enable the modification motion judge to determine whether the terms of the agreement continue to be fair and equitable. Lepis, supra, 83 N.J. at 148-49, 416 A.2d 45. Had each party testified at the divorce proceeding on the issue of rehabilitative alimony, any misperception as to the effect of rehabilitative alimony could have been clarified. If clarification was required, renegotiation of the terms of the property settlement agreement could have occurred. It would clearly have been in the parties' interest to resolve those disputes prior to the finalization of the divorce proceeding.
Here, the motion judge considered the case information statements filed by the parties during the course of their divorce litigation and was able to compare those statements with revised financial data as of the date of the plenary hearing. His analysis, however, though detailed and thorough, was naturally limited by the absence of any testimony pertinent to the details of the rehabilitative plan.
The importance of clarifying the parties' intent and understanding the effect of rehabilitative alimony is underscored by our discussion in Milner v. Milner, 288 N.J.Super. 209, 672 A.2d 206 (App.Div.1996) and Shifman v. Shifman, 211 N.J.Super. 189, 511 A.2d 687 (App.Div.1986).
In Milner, we stated:
An award of rehabilitative alimony may be appropriate "where a short-term or lump-sum award from one party in a divorce will enable [the] former spouse to complete the preparation necessary for economic self-sufficiency." The basic premise of an award of rehabilitative rather than permanent alimony is "an expectation that the supported spouse will be able to obtain employment, or more lucrative employment at some future date." Thus, rehabilitative is "payable for a terminable period of time when it is reasonably anticipated that a spouse will no longer need support." Therefore, if the supported spouse is unsuccessful in obtaining the kind of employment required for the economic self-sufficiency anticipated at the time of divorce, "this properly may be viewed as a `changed circumstance' which would justify the continuation of alimony beyond the original termination date."
[Milner, supra, 288 N.J.Super. at 213-14, 672 A.2d 206 (citations omitted).]
In Milner, the parties were married in 1962 and divorced in 1985. The parties entered into a settlement agreement incorporated into a judgment of divorce requiring defendant to pay $2,000 alimony per month for a period of ninety-four months. Id. at 211-12, 672 A.2d 206. "The agreement also provided that `[i]n order for a party to seek a change in the support, the party seeking the change must first make a prima facie showing of their entitlement to a change in the amount of support.'" Id. at 212, 672 A.2d 206. In Milner, the supported spouse, who was a college graduate as of the date of marriage, secured a master's degree in fine arts during the marriage. During the period that plaintiff was receiving alimony, which was not denominated "rehabilitative," plaintiff actively sought employment, without success, in the field of fine arts. She then decided to become a realtor. We noted that due to weakness in the real estate market and plaintiff's inexperience, plaintiff's income *983 was limited. Ibid. Prior to the expiration of the ninety-four month alimony period, plaintiff filed a motion "to increase alimony and to make defendant's obligation permanent." Ibid.
In Milner, Judge Skillman cited his prior decision in Shifman, supra, 211 N.J.Super. 189, 511 A.2d 687. In Shifman, the parties' property settlement agreement "provided for the payment by defendant of rehabilitative alimony of $150 per week from March 1983 to March 1985 and of $100 per week from March 1985 to March 1987." Id. at 191-92, 511 A.2d 687. The plaintiff moved to increase the amount of alimony on May 16, 1985. She contended that her psychiatric condition prevented her from seeking the employment she had anticipated as of the date that she executed the property settlement agreement. In affirming the trial court's decision that plaintiff had failed to demonstrate sufficient "changed circumstances between March 1983 and July 1985 which would require such relief", id. at 193, 511 A.2d 687, we stated:
We also conclude that the part of the trial court's order which refused to convert the rehabilitative alimony to permanent alimony should be affirmed, because such relief would be premature. Under the settlement agreement, rehabilitative alimony is scheduled to continue until March 1987, which is almost two years after the motion for modification for alimony was heard and is still almost a year away. We are convinced that a motion to extend the term of alimony payments should not have been entertained until six months before their scheduled termination. In this way the trial court could have determined plaintiff's employability at a time which was reasonably close to when the payment of alimony would expire and hence when plaintiff's alleged need for the continuation of alimony would arise. Furthermore, the trial court could have made a better assessment at that time of the anticipated needs and resources of the parties as of March 1987.

[Ibid. (emphasis added).]
Shifman clearly instructs that a motion to convert rehabilitative alimony to permanent alimony should be filed prior to the termination of the rehabilitative alimony payments but reasonably close to the date that rehabilitative alimony is to end, so as to provide the motion judge with current information to assess the "anticipated needs and the [financial] resources of the parties." Ibid. In Milner, the plaintiff sought to convert rehabilitative alimony to permanent alimony prior to and shortly before the expiration of the rehabilitative alimony term. Milner, supra, 288 N.J.Super. at 212, 672 A.2d 206.
Arguably, language within both Milner and Shifman might be construed to support plaintiff's contention that conversion from rehabilitative alimony to permanent alimony must occur during the period of rehabilitative alimony payments and shortly before the payment of rehabilitative alimony ends. However, it is clear that neither Milner nor Shifman specifically limits a spouse's right to seek permanent alimony to an application filed during the period that rehabilitative alimony is being paid. Lepis, supra, 83 N.J. 139, 416 A.2d 45, does not impose such limitation and, in fact, reiterates varied circumstances which permit a modification of alimony and emphasizes that the overriding equitable consideration is a determination "whether the former marital standard of living is being maintained." Id. at 150-51, 416 A.2d 45 (citations omitted). Yet, conversely, Lepis also instructs that the terms of any matrimonial settlement agreement "should receive continued enforcement without modification only so long as they remain fair and equitable." Id. at 148-49, 416 A.2d 45. See also Shifman, supra, 211 N.J.Super. at 194, 511 A.2d 687. Arguably, had the record at the divorce proceeding clearly reflected that neither party intended, despite a change of circumstances reasonably anticipatable at the time of their agreement, plaintiff's obligation to extend beyond a three year period, and assuming further the motion judge concluded that the agreement as negotiated remained "fair and equitable," Lepis, supra, 83 N.J. at 148-49, 416 A.2d 45, defendant's application in this case might have been denied.
The determination of the standard of living of the parties is one of the statutory components which a court must consider in *984 awarding permanent alimony. N.J.S.A. 2A:34-23b provides that a court shall consider:
(1) The actual need and ability of the parties to pay;
(2) The duration of the marriage;
(3) The age, physical and emotional health of the parties;
(4) The standard of living established in the marriage and the likelihood that each party can maintain a reasonably comparable standard of living;

(5) The earning capacities, educational levels, vocational skills, and employability of the parties;
(6) The length of absence from the job market of the party seeking maintenance;
(7) The parental responsibilities for the children;
(8) The time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, the availability of the training and employment, and the opportunity for future acquisitions of capital assets and income;
(9) The history of the financial or non-financial contributions to the marriage by each party including contributions to the care and education of the children and interruption of personal careers or educational opportunities;
(10) The equitable distribution of property ordered and any payouts on equitable distribution, directly or indirectly, out of current income, to the extent this consideration is reasonable, just and fair; and
(11) Any other factors which the court may deem relevant.

[Id. (emphasis added).]
Here, the judge recognized that he was obliged to consider the standard of living of the parties during the marriage and relied upon our discussion in Walles v. Walles, 295 N.J.Super. 498, 685 A.2d 508 (App.Div.1996), to the effect that "the original judgment establishing alimony creates the standard of living of the supported spouse." Id. at 512, 685 A.2d 508. Although the judge correctly cited Walles, its holding is inapposite to the issue presented by defendant's motion. Here, the original judgment of divorce did not, as in Walles, award permanent alimony, but only awarded rehabilitative alimony pursuant to N.J.S.A. 2A:34-23b. Since any award of permanent alimony to defendant would constitute her first permanent alimony award, it was incumbent upon the judge to consider all of the statutory factors enumerated in N.J.S.A. 2A:34-23b(1 to 11) as if deciding the permanent alimony ab initio. Had the judge considered all statutory factors, he would have particularly considered N.J.S.A. 2A:34-23b(2) "The duration of the marriage." As noted, the parties were married on August 24, 1979, separated on April 3, 1988, and were divorced by a judgment entered January 4, 1991. It is not clear from those facts that an award of permanent alimony would have been considered appropriate ab initio. See Heinl v. Heinl, 287 N.J.Super. 337, 346, 671 A.2d 147 (App.Div. 1996) (noting judicial error in failing to fully articulate why a relatively short marital life required an award of permanent alimony rather than rehabilitative alimony); cf. Hughes v. Hughes, 311 N.J.Super. 15, 32-33, 709 A.2d 261 (App.Div.1998) (discussing duration of the marriage as a factor in determining an award of permanent alimony, rehabilitative alimony, or both).
We recognize that the motion judge carefully analyzed the case information statement filed by defendant in 1990 prior to the judgment of divorce with a case information statement filed in support of her motion for permanent alimony. Yet he failed to make any finding that the sum which the parties negotiated as rehabilitative alimony was, in fact, the same sum which would have been awarded defendant as permanent alimony ab initio. Had the original judgment awarded permanent alimony and had defendant sought a modification predicated upon a change in circumstances attributable to her medical condition, the methodology of the motion judge would have been correct. As noted in Lepis, supra, 83 N.J. at 152, 416 A.2d 45, "When support of an economically dependent spouse is at issue, the general considerations are the dependent spouse's needs, that spouse's ability to contribute to the fulfillment of those needs, and the supporting *985 spouse's ability to maintain the dependent spouse at the former standard."
The sum negotiated as rehabilitative alimony may be influenced solely by economic factors attributable to rehabilitation and may not have any bearing upon the standard of living of the parties during the marriage.[9] That is one principle reason why the amount of rehabilitative alimony may not be dispositive of a later judicial decision awarding permanent alimony. Although it is conceivable that the sum negotiated as rehabilitative alimony would have been the same sum awarded as permanent alimony at the time of the divorce, without a specific finding by the motion judge of that fact we are unable to properly evaluate the judge's decision. See Curtis v. Finneran, 83 N.J. 563, 569-70, 417 A.2d 15 (1980); Rolnick v. Rolnick, 290 N.J.Super. 35, 42-43, 674 A.2d 1006 (App. Div.1996); Ribner v. Ribner, 290 N.J.Super. 66, 76-77, 674 A.2d 1021 (App.Div.1996).
We recognize that many payor spouses may reasonably believe that their obligation to pay alimony will cease at the conclusion of any rehabilitative period in the absence of a separate provision requiring the payment of both rehabilitative alimony and permanent alimony. See Hughes v. Hughes, supra, 311 N.J.Super. at 32, 709 A.2d 261; Kulakowski v. Kulakowski, 191 N.J.Super. 609, 468 A.2d 733 (Ch.Div.1982). Because we have concluded that the fulfillment of an obligation to pay rehabilitative alimony does not per se prohibit a former spouse from thereafter seeking permanent alimony, we conclude that the motion judge, when asked to consider a permanent alimony demand by a former spouse, must consider changes in the payor spouse's lifestyle between the date when rehabilitative alimony ends and the date when the former supported spouse seeks permanent alimony. Here, once plaintiff's obligation to pay rehabilitative alimony ended, he had the right to allocate his financial resources to other financial obligations. Although the motion judge observed that plaintiff's income had increased from the sum earned in 1990, he failed to specifically analyze plaintiff's existing financial obligations and to determine whether plaintiff's present obligations were incurred after he fully complied with his rehabilitative alimony obligation during a period of time that defendant was silent as to her financial needs. Nor did the judge fully consider plaintiff's testimony that his gross income in 1996[10] reflected substantial overtime salary. Although overtime pay is a factor to be included in any financial analysis, the judge must consider whether the receipt of overtime income is sporadic. Cf. Pressler, Current New Jersey Court Rules, Appendix IX-B, 2029-30, 2047-48 (instructing that, for the purpose of determining child support, "overtime pay" is deemed "sporadic income" requiring the inclusion in the gross income calculation "the average ... on the prior 12 months or first receipt whichever time is greater").
Another equitable consideration which must be addressed by the motion judge on remand is the passage of time between the date when rehabilitative alimony ended and the date of defendant's motion seeking permanent alimony. Although the passage of time cannot itself bar a spouse from seeking alimony based upon a change in circumstances, clearly as time passes, the equities which permit an award of permanent alimony will ebb. Here, defendant's motion was filed 106 weeks after plaintiff ceased paying rehabilitative alimony. In September 1993, two months prior to the cessation of rehabilitative alimony, defendant received a net settlement in her tort litigation of $43,000. Plaintiff, under paragraph 12 of the property settlement agreement, ante, was prohibited from seeking a reduction in his rehabilitative alimony obligation based upon defendant's settlement. Although defendant testified that she used an unspecified portion of that net settlement to defray on-going medical treatment, she admitted that she used the balance for current living expenses. Hypothetically, had defendant *986 allocated $40,000 to a fund to offset current living expenses and had she deducted from the allocated fund, $165 per week, the fund, excluding any accretion attributable to interest, would have been dissipated after 242 weeks. We suggest that the motion judge should have considered defendant's settlement in evaluating her application for permanent alimony, particularly in determining whether continued enforcement of the property settlement agreement without modification might be fair and equitable. Lepis, supra, 83 N.J. at 148-49, 416 A.2d 45.
In sum, the decision to grant or deny defendant's motion for permanent alimony should have been considered utilizing the statutory standards enunciated in N.J.S.A. 2A:34-23b, however, subject to: a consideration of the parties' prior rehabilitative agreement; equitable considerations, which include the passage of time; plaintiff's current financial obligations incurred after rehabilitative alimony ceased; defendant's receipt of a net settlement of $43,000, and the fact that the parties' agreement prohibited plaintiff from seeking a reduction of rehabilitative alimony predicated upon defendant's settlement; and with recognition of the concept that the "terms of a negotiated agreement should receive continued enforcement without modification only so long as they remain fair and equitable." Lepis, supra, 83 N.J. at 148-49, 416 A.2d 45.
Reversed and remanded for reconsideration.
NOTES
[1] This opinion does not address any other issue raised by either party in the initial post-judgment motion or on defendant's motion for reconsideration. Although defendant filed a cross-appeal, her brief on appeal was suppressed.
[2] Although plaintiff apparently filed a complaint for compensatory damages against the other motor vehicle operator, the nature and extent of his injuries and the terms of an ultimate settlement of that litigation have not been provided within the record on this appeal.
[3] At a subsequent plenary hearing, discussed infra, uncontradicted testimony was presented that the home equity debt was $14,000 and the initial debt was incurred to defray the cost of home repairs and to purchase a motorcycle. Plaintiff retained title to the motorcycle as a component of the equitable distribution of property provisions in the agreement.
[4] The underlined portion of clause 12 was a handwritten addition to the typed form of the agreement.
[5] The Judgment further provided:

Ordered, based upon a further agreement of the parties as spread upon the record, as follows:
a. that Plaintiff shall pay to the attorney for Defendant a $500.00 counsel fee, as previously ordered, by Order filed April 25, 1990;
b. that the issue of counsel fees relative to the within matter shall be determined by the Hon. Mark B. Epstein, upon the submission to the Hon. Mark B. Epstein of a Certification of Services submitted by any party seeking counsel fees herein and any response thereto.
[6] At the plenary hearing, defendant testified that her monthly Social Security disability benefits and her son's disability benefits had just recently been increased but she was unable to recall the exact extent of the increase in monthly benefits. The motion judge ultimately utilized the exact prior benefit figures in determining both permanent alimony and child support.
[7] In separate litigation, defendant sought to recover reimbursement of all medical bills attributable to the motorcycle-commercial van collision. Plaintiff's comprehensive motorcycle liability insurance policy limited defendant's right to recover medical expenses to $10,000. Although defendant prevailed in the Law Division in her claim that plaintiff's insurer was responsible for all of defendant's medical expenses, on appeal filed by the insurer, in an unreported decision, we reversed the Law Division judgment.

During the plenary hearing on defendant's motion and on the cross-motions for reconsideration, discussed infra, it was undisputed that defendant only received a net sum of $43,000 in the settlement of her personal injury claims against plaintiff and the commercial vehicle that collided with plaintiff's motorcycle.
[8] Although defendant filed a cross-appeal, she failed to file a brief in support of her cross-appeal. Defendant's cross-appeal was therefore administratively dismissed.
[9] A clarification of the parties' intent at the time of the divorce may also reveal that the parties actually intended "limited term alimony," in lieu of a lump-sum payment, but selected the words "rehabilitative alimony" as a substitute denomination. See Frank Louis, Limited Duration Alimony, 1991 N.J. Family Law. 133 (1991).
[10] The plenary hearing on defendant's motion was conducted on January 22 and 23, 1997.