**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2225-20

CHRISTINE ANN HORVATH,

    Plaintiff-Appellant,

v.

SCOTT E. HORVATH,

    Defendant-Respondent.

_____

Argued May 9, 2022 – Decided July 11, 2022

Before Judges Rothstadt and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FM-11-1156-07.

Andrew M. Shaw argued the cause for appellant (Shaw Divorce & Family Law, LLC, attorneys; Andrew M. Shaw, on the briefs).

Matthew B. Lun argued the cause for respondent.

PER CURIAM

In this post-judgment dissolution matter, plaintiff Christine Ann Horvath appeals from the Family Part's November 6, 2020 order that was amended on November 19, 2020, terminating defendant Scott E. Horvath's alimony obligation and modifying his child support obligation, which were established in the parties' February 14, 2007 Dual Judgment of Divorce (DJOD). She also challenges a March 16, 2021 order, granting in part and denying in part her motion to reconsider, and an April 13, 2021 order, fixing the amount of a credit owed to defendant that was to be applied to his future child support obligations.

On appeal, plaintiff argues the motion judge misapplied the law and her findings were not supported by sufficient evidence. As to alimony, plaintiff contends the judge improperly treated the "rehabilitative alimony" she received under the parties' property settlement agreement (PSA) as "limited duration alimony" when the judge determined that plaintiff's post-judgment disability was not an unusual circumstance warranting a conversion of the alimony's term. As to child support, plaintiff argues, and defendant concedes, that the judge applied outdated Child Support Guidelines (Guidelines)[1] in determining how to treat plaintiff's receipt of social security disability (SSD) derivative benefits.

---

[1] Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, www.gannlaw.com (2021).

For the reasons that follow, we conclude the motion judge miscalculated child support and failed to support her decision to terminate alimony with sufficient facts. We therefore vacate the orders under appeal and remand the matter for reconsideration after the judge conducts a plenary hearing as to defendant's alimony obligation's termination and then issues a corrected child support determination based on the current Guidelines.

## I.

The salient facts taken from the record are summarized as follows. The parties married in October 1991. They had two children, a daughter who is now twenty-four years old and emancipated, and an unemancipated nineteen-year-old son. They divorced pursuant to their DJOD, which incorporated their PSA.

The relevant provisions in the PSA stated:

> 1.4 Neither party shall interfere with the other in his or her respective liberty, conduct or action and each agrees that the other may at any time reside in such place as the said other may choose. Each may, for his or her separate use and benefit, conduct, carryon, and engage in any business and profession, or employment which to him or her may seem fit or advisable, free from control, restriction or interference, direct or indirect, by the other. Neither party shall annoy or interfere with any personal or business associates of the other.
>
> 3.1 [Defendant] agrees to pay child support in accordance with the Child Support Guidelines.

. . . .

3.9 [Plaintiff] shall be entitled to receive rehabilitative alimony for a period of five (5) years as follows:

> 1. $325 per week for the first year.
> 2. $300 per week for the second year.
> 3. $275 per week for the third year.
> 4. $250 per week for the fourth and fifth years.

This rehabilitative alimony shall not be affected by the cohabitation of [plaintiff] in any relationship, regardless if it is tantamount to marriage, or remarriage, for the first three (3) years. [Defendant] shall also obtain a life insurance policy on himself and for the benefit of [plaintiff]. It is intended that this policy shall be used to meet his alimony obligations in the event of his untimely death.

3.10 [Defendant] shall pay [plaintiff] the sum of $1,250 representing 50% of [plaintiff's] remaining school costs.

. . . .

4.4 Except as provided to the contrary by the within agreement, the parties do hereby expressly renounce, waive and relinquish all rights inuring to their respective benefits pursuant to or by reason of the marital relationship, as follows:

> (a) The right to receive alimony, support or maintenance; . . . .

. . . .

4.9 Neither party will make any claim against the other for temporary or permanent alimony, support or

A-2225-20

maintenance, for reimbursement of legal fees, court costs or other expenses, unless otherwise set forth in the within agreement.

It is undisputed that shortly after the parties divorced, plaintiff was diagnosed with disabling multiple Sclerosis. As a result, plaintiff could not work and was eventually determined by the Social Security Administration (SSA) to be totally disabled as of January 1, 2008. Plaintiff began to receive SSD payments on or about May 11, 2009. It is also undisputed that defendant continuously paid alimony to plaintiff beyond the five-year period stated in the PSA until the orders entered in this action in 2020 and 2021.

Earlier, in 2012, when the five-year alimony term had expired, defendant filed a motion to reduce his alimony and child support obligations.[2] He did not seek to terminate either. In response to his motion, plaintiff filed a cross-motion to convert her rehabilitative alimony to permanent alimony based on her disability. On March 2, 2012, a judge entered an order that denied relief to both parties, without prejudice, because the parties' failed to submit sufficient evidence in support of their positions.

---

[2] The parties did not submit a copy of these motion papers for the appellate record. We rely on the March 2, 2012 order addressing these motions.

No additional motions were filed again until 2020. Moreover, as already noted, defendant continued to pay child support and alimony as if the five-year term never expired.

On August 10, 2020, defendant filed a motion to terminate alimony and recalculate child support, which plaintiff opposed with a cross-motion to convert her rehabilitative alimony to permanent alimony. In his supporting certification, defendant argued that he was entitled to termination of alimony under the PSA and a reduction in child support because he had been overpaying for many years, plaintiff and their children were receiving SSD payments, and plaintiff was cohabitating with another person. Plaintiff explained in her supporting submission why she and the children continued to require even more in support than defendant had been paying, primarily due to her disability.

After considering the parties' oral arguments on November 6, 2020, the motion judge entered an order granting defendant's motion to terminate alimony effective February 14, 2012, and awarded him the right to a credit for his overpayment of alimony and child support, which was to be applied to his future child support obligation. She also granted defendant's motion to recalculate child support in light of his allegation that plaintiff and the children received

A-2225-20

SSD benefits and, to that end, she directed plaintiff to submit additional information before the credit amount was to be calculated.

In her accompanying written decision, the judge reasoned that the PSA set forth the terms for payment of "limited duration alimony" and plaintiff's disability did not constitute the unusual circumstances required to modify the term of the "limited duration alimony." According to the judge, without any reference to the language used by the parties' in the 2007 PSA about rehabilitative alimony, she found "the parties entered into a PSA that explicitly set the terms for limited duration alimony and recalculation of child support." The judge rejected plaintiff's contention that defendant was not entitled to relief because he "slept on his rights" as he had filed a motion in 2012 that was denied without prejudice on procedural grounds.

Turning to the issue of a credit for his overpayment, the judge stated she accepted defendant's proposal to apply it to "future expenses related to the children" and not require a lump sum repayment from plaintiff. The judge stated, "defendant has asked that the total amount of any money credited to him be applied to cover future expenses related to the children, including any child support and college contribution. In other words, he is not seeking for the plaintiff to repay to him a substantial lump sum, which is estimated to be more

A-2225-20

than $100,000." Rather than have plaintiff repay defendant, the credit was to offset his child support obligations going forward.

On November 19, 2020, the judge amended her November 6 order to terminate a previously issued income withholding order. In her accompanying statement of reasons, the judge again addressed the credit. She stated, "the court finds that given the amount of overpayment, which is likely to be in excess of $100,000, it is fair, reasonable[,] and appropriate to terminate defendant's child support obligation, without prejudice. This action will also serve to alleviate the Probation Division from the responsibility of maintaining this account under these unique circumstances."

Thereafter, plaintiff filed a motion for reconsideration. In her supporting submissions, plaintiff explained why the judge's treatment of the children's anticipated SSD benefits was inconsistent with the Guidelines and she argued that alimony should have been extended due to her "'unusual circumstances' of an unforeseen disability," and because defendant continued to pay alimony and not request his obligation be terminated for eight years, triggering the doctrine of laches. According to plaintiff, she relied on his continuing payment when she decided to not seek an increase in child support over those same years.

While plaintiff's motion was pending, she submitted documents that demonstrated that the parties' adult daughter received a lump sum payment of $65,503.04 from the SSA for unpaid derivative SSD benefits dating back to June 2008, and plaintiff received $10,688.00 on behalf of the parties' son in a lump sum for the same benefits dating back to 2019, and that plaintiff would continue receiving $776.00 in monthly derivative benefits for the parties' son.[3]

Later, defendant filed opposition to plaintiff's reconsideration motion. In his certification, he explained that probation calculated his overpayment of alimony to be $148,752.12. He reiterated that since he did "not expect [p]laintiff to write a check to [him] with this amount of overpayment, [he] proposed that [he] receive a credit towards [his] future child support obligation[] for [the] children instead." He suggested that because his daughter was emancipated, the credit be applied to the few years he anticipated that his son would be unemancipated. Any remaining amounts would be used towards his obligation to pay for payment of "the children's unreimbursed medical expenses and other expenses not covered in child support. Then, if [he is] still owed a credit, [he was] willing to waive the remainder of [his] credit."

---

[3] It appears from the SSA documentation submitted by plaintiff that the retroactive benefit period for the son only covered one year. The reason is unclear.

Without hearing oral argument, on March 16, 2021, the judge entered an order granting in part and denying in part plaintiff's motion for reconsideration, which the judge supported with an accompanying statement of findings and conclusions of law. The judge reconsidered whether credits for alimony overpayments could be applied to offset child support obligations and determined they could not, reversing the portion of her November 19 order that did so.[4]

The judge also vacated her earlier decision fixing the date for termination of alimony as March 2012. Instead, she applied the doctrine of laches and fixed the date as of defendant's filing his motion in 2020. However, the judge denied reconsideration of her order to terminate alimony for substantially the same reasons stated in her November 19 order.

Also, the judge recalculated defendant's child support obligations based on outdated Guidelines, reserving on the amount of the credit for overpayments made until plaintiff provided information about "the date when plaintiff began receiving [SSD] benefits." In the order, the judge also suspended defendant's child support obligation for the parties' son "until [his] eighteenth birthday

---

[4] In the March 16 order, the judge refers to an October 29, 2020 order, which apparently was an error intended to refer to her November 19, 2020 order.

[which is] the date upon which his [SSD] benefits cease. After that date, and in light of [the daughter's] child support termination date [eight days later], child support [for the son] shall be set at $266 per week." In her decision, the judge reasoned, "the benefits [the parties' son] currently receives exceed defendant's child support obligation."

In accordance with judge's order, on March 23, 2021, plaintiff provided additional documents that demonstrated her benefits period began January 1, 2008.

On April 13, 2021, the judge entered a final order, without an accompanying statement of facts and conclusions of law, calculating the credit owed to defendant to be $76,052, the entire lump sum of derivative SSD benefits received by the parties' daughter and by plaintiff on behalf of their son. This appeal followed.

## II.

We begin by acknowledging our review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "We review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare, 154 N.J. at 413). "Thus,

'findings by the trial [judge] are binding on appeal when supported by adequate, substantial, credible evidence,'" id. at 283 (quoting Cesare, 154 N.J. at 411-12), and it is "[o]nly when the trial [judge]'s conclusions are so 'clearly mistaken' or 'wide of the mark' should [we] intervene and make [our] own findings to ensure that there is not a denial of justice," N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007)).  We do not, however, owe any deference to the court's "interpretation of the law." Thieme, 227 N.J. at 283 (quoting D.W. v. R.W., 212 N.J. 232, 245 (2012)).

We also apply our deferential standard to Family Part judges' determinations about alimony.  We will uphold an alimony award on appeal unless the judge failed to apply the correct legal standards or abused his or her discretion by making findings that are not supported by sufficient credible evidence in the record.  J.E.V. v. K.V., 426 N.J. Super. 475, 485 (App. Div. 2012) (citing Heinl v. Heinl, 287 N.J. Super. 337, 345 (App. Div. 1996)).  A trial judge abuses his or her discretion "when a decision is 'made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis.'" Kornbleuth v. Westover, 241 N.J. 289, 302 (2020)

(quoting Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015)).

The same standard applies to trial judges' child support determinations. The award of child support is committed to the sound discretion of the trial judge and the award will not be disturbed on appeal "unless it is 'manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice.'" Gotlib v. Gotlib, 399 N.J. Super. 295, 309 (App. Div. 2008) (quoting Foust v. Glaser, 340 N.J. Super. 312, 315-16 (App. Div. 2001)).

Where an award of alimony or child support is the subject of a reconsideration motion, we again apply an abuse of discretion standard. On appeal from a denial of a motion to reconsider, our review is also limited, but the denial "will be set aside if its entry is based on a mistaken exercise of discretion." Brunt v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 357, 362 (App. Div. 2018).

III.

With these guiding principles in mind, we first address what the parties agree was the motion judge's error in applying plaintiff's and the children's SSD benefits in her calculation of child support under the Guidelines.

13

On appeal, plaintiff concedes defendant is entitled to a credit due to their children receiving derivative benefits, however she argues the credit was miscalculated by the judge because she gave a dollar-for-dollar credit to defendant for the amount the children received from the SSA based on plaintiff's disability, which was inconsistent with the 2013 amendments to the Guidelines.

In response, defendant agrees remand is necessary to recalculate child support in accordance with those amendments and that a "dollar-for-dollar" credit was not warranted. However, defendant claims the Guidelines do not instruct how the judge should calculate the credit owed to him for paying Guidelines-based support that did not account for the derivative benefits the children received. According to defendant, under Diehl v. Diehl, 389 N.J. Super. 443 (App. Div. 2006), he is entitled to a credit in the amount of his overpayment, calculated as the difference from what he paid and what he would have paid if derivative benefits were included in the calculation pursuant to the 2013 amendment, over the term during which the lump sum derivative benefits covered, that is going as far back as 2008 for one child.

According to plaintiff, defendant's overpayment should be calculated pursuant to the 2013 amendments, however because the anti-retroactivity statute, N.J.S.A. 2A:17-56.23a, limits the credit to being calculated only for the

period beginning on the date on which defendant filed his motion seeking modification, any change in support and the amount of the credit, if any, can be based upon only the period beginning with defendant's filing of his motion in 2020. Additionally, plaintiff argues that any benefit paid directly to the parties' now-adult daughter should not be factored into the equation because the funds are not available to plaintiff to use for the children's support and to do so would detrimentally impact the parties' unemancipated child.

We conclude that the judge failed to apply the SSD benefits in accordance with the current Guidelines. However, we agree with plaintiff that any calculation of a credit based on an overpayment of child support must be calculated retroactive to defendant's filing of his motion in 2020.

We disagree with defendant that Diehl requires any modification to be effective retroactive to the beginning of the period that SSD benefits became effective. In Diehl, unlike the circumstances here, we addressed the application of SSD benefits payable to children where the supporting parent—the one with the court ordered obligation—became disabled. 389 N.J. Super. at 447. We explained that SSD benefits are derived from the worker's social security contributions, and the benefits substitute for lost earning power during periods of disability. Id. at 459. Here, the SSD benefits substituted for the earnings of

15

the obligee, plaintiff, and, as we discuss <u>infra</u>, were not properly calculated into the Guidelines amount.

However, as defendant correctly contends, the modification should be correctly calculated going back to the benefits' effective date, but contrary to defendant's position, the new amount of child support, if any, should begin on August 10, 2020, the date defendant filed his last modification motion. <u>See</u> N.J.S.A. 2A:17-56.23a.

Here, it is undisputed that the motion judge did not employ the Guidelines as amended in 2013. That amendment specifically modified the manner that SSD benefits were to be addressed in determining child support. The relevant portion of the Guidelines states the following:

> Derivative benefits have eligibility standards that are based on the contribution (e.g., work history, military service, disability or retirement) of one of the parties, without regard to family income. This includes but is not limited to Social Security Disability, Social Security Retirement, Black Lung, and Veteran's Administration benefits. Such payments are either deducted from a parent's government benefit or paid in addition to the parent's benefit. These child benefits are earned benefits that are meant to replace the lost earnings of the parent in the event of disability or retirement. <u>The derivative child benefits shall be counted in the weekly net income of the parent whose contribution is the source of the benefits and applied as a credit to that parent's child support obligation</u>. If the amount of the support obligation after deducting the

benefits is zero, then the child support obligation is satisfied and no support award should be ordered while the child is receiving the benefits.

[Pressler & Verniero, Appendix IX-A to R. 5:6A, ¶ 10(c)(2) (emphasis added).]

Pursuant to the 2013 revision, derivative SSD benefits under these circumstances must be included as income of the parent with a disability, and then applied as a credit to that parent's child support obligation rather than the prior methodology, where the benefits were deducted from the overall award before apportioning the remaining obligation, if any, between the parties. Compare Cleveland v. Cleveland, 249 N.J. Super. 96, 103 n.7 (App. Div. 1991) (noting the trial court's decision to increase the obligor's income by the amount of derivative benefits and then apply the benefits as an offset against the obligor's percentage share, which is consistent with the 2013 amendment) with Herd v. Herd, 307 N.J. Super. 501, 503 (App. Div. 1998) (deducting benefits amount from the overall award of child support).

Here, the judge did not follow the 2013 amendment by including derivative benefits as income to plaintiff, the parent with a disability, and then crediting only plaintiff for the derivative benefits to the extent of her obligation, if any. Instead, in her calculation of defendant's obligation as of March 16, 2021, the judge properly included derivative benefits as income to plaintiff;

17

however, she improperly deducted the derivative benefits from defendant's, the non-disabled parent's obligation, when she suspended it until the parties' son's eighteenth birthday because the benefits paid to the son exceeded defendant's child support obligation, which was consistent with the pre-2013 amendment methodology but now incorrect. Also, before she suspended his obligation, the judge improperly ordered defendant's obligation to be $322 per <u>month</u>, while her worksheet shows his obligation should have been $322 per <u>week</u>.[5]

As to the commencement date of any modified support amount, as already noted, the new child support amount must be calculated to include the SSD benefits when they commenced. However, contrary to defendant's argument before us, any reduction in support and the amount of any resulting credit can be based upon a starting date of only August 10, 2020, the date defendant filed the modification motion because the period for application of child support modification is expressly limited to that period by statute. <u>See</u> N.J.S.A. 2A:17-56.23a.

---

[5] The judge's calculation of defendant's obligation as of June 13, 2021, as noted in her April 13, 2021 order, did not include derivative benefits as income to plaintiff because that calculation was for the period after the parties' son turned eighteen and benefits would have ceased.

A-2225-20

Therefore, a remand is necessary to recalculate child support obligations pursuant to the current Guidelines. It is only after the child support is correctly calculated that defendant's overpayment, if any, can be calculated to determine any credit to which he might be entitled due to the children's receipt of SSD benefits. The determination of whether a credit is owed and its amount should consider the equities affected by the circumstances at different periods, including (1) August 10, 2020, when defendant filed his motion, to November 2020, when his obligation was suspended, (2) November 2020 to June 13, 2021, when the son turned eighteen and derivative benefits ceased, (3) June 13, 2021 to June 19, 2021, when the daughter's child support terminated, and (4) the ensuing period. See Labrosciano v. Labrosciano, 426 N.J. Super. 252, 262 (Ch. Div. 2011) (citing Diehl, 389 N.J. Super. at 450) (discussing differing standards for award of credits for lump sum derivative SSD benefits based on various circumstances at different periods).

Notably, in any calculation of a credit, because the lump sum derivative benefits paid directly to the parties' daughter are out of plaintiff's reach, they cannot be presumed to have been applied for the care of both children, and cannot be applied towards support of the unemancipated child. See Diehl, 389 N.J. Super. at 448-49, 455-56 (recognizing lump sum SSD benefits paid directly

19

to child after she turned eighteen belong to the child, but cannot be disregarded when calculating an overpayment to child support and could offset future support obligations of that child, depending on the equities of the case); cf. Pressler & Verniero, Appendix IX-A to R. 5:6A, ¶¶ 7(j), 18 ("These guidelines assume that the obligee is spending the support award for the benefit of the child or children." "[P]rimary consideration shall be given to the continued support of minor children remaining in the primary residence . . . .").

IV.

Before child support can be determined, the issue of plaintiff's alimony must be revisited. On appeal, plaintiff argues the judge erred in denying her request to extend rehabilitative alimony or convert it to open durational alimony because her post-judgment diagnosis with multiple sclerosis that left her completely disabled and unable to work clearly constituted changed circumstances warranting such a modification. Specifically, plaintiff contends the judge, in her first decision, applied the incorrect standard—unusual circumstances—to determine whether defendant's alimony obligation could be extended. Additionally, plaintiff claims the judge's reasoning for denying reconsideration of that decision was flawed because plaintiff applied for a modification of rehabilitative alimony in 2020 and her application was not

precluded by the 2012 order that denied without prejudice her motion for the same relief. Plaintiff also argues the judge should have granted oral argument because this is a substantive issue of extreme consequence to her and her children's well-being.

In response, defendant argues the judge properly terminated his alimony obligation. Specifically, defendant contends the parties expressly waived any alimony other than the limited rehabilitative alimony specifically outlined in the parties' PSA. Alternatively, defendant claims his alimony obligation could be terminated because plaintiff was cohabitating with her boyfriend and because the doctrine of laches precludes plaintiff from seeking a modification of support after sitting on her rights for roughly eight years after her initial application was denied.

Plaintiff replies that the parties' PSA explicitly provided for "rehabilitative alimony" and she did not explicitly waive the right to extend or convert it, and alternatively that her disability now renders any waiver unfair, inequitable, and consequently unenforceable. As to her possible cohabitating affecting defendant's alimony obligations, plaintiff claims the judge did not meaningfully analyze the issue. Finally, plaintiff contends the doctrine of laches is inapplicable to her because defendant voluntarily paid alimony for many years

beyond the termination date established in the parties' PSA and so there was no need to seek relief.

As already mentioned, we conclude a plenary hearing is warranted as to what the parties intended by agreeing to "rehabilitative alimony" for a fixed period, whether their agreement barred plaintiff from seeking any modification based upon her subsequent unexpected diagnosis, and what impact, if any, either party's failure to seek relief for eight years after the 2012 order had on their claims for modification, termination, or conversion of defendant's alimony obligation.

At the outset, we acknowledge the significance of the PSA. In divorce matters, "'the use of consensual agreements to resolve marital controversies' is particularly favored." Weishaus v. Weishaus, 180 N.J. 131, 143 (2004) (quoting Konzelman v. Konzelman, 158 N.J. 185, 193 (1999)). Such agreements are accorded "prominence and weight" and "should not be unnecessarily or lightly disturbed." Konzelman, 158 N.J. at 193-94.

Our review of a trial judge's interpretation of a PSA is de novo. Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020). In our review, we apply the general rule that courts should "enforce contracts as the parties intended." Pacifico v. Pacifico, 190 N.J. 258, 266 (2007). "[I]t is a basic rule of contractual

interpretation that a court must discern and implement the common intention of the parties." Ibid. To determine the parties' design, we look at the agreement as a whole, not just one sentence. To that end, we consider the terms of the agreement as written "in the context of the circumstances at the time of drafting and . . . apply a rational meaning in keeping with the 'expressed general purpose'" of the parties. Ibid. (quoting N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 302 (1953)).

Prior to statutory amendments in 1999, specifically recognizing limited duration alimony, the term "rehabilitative alimony" was used to encompass awards of both rehabilitative alimony and limited duration alimony (also then-referred to as limited term or term alimony), as we understand them today. J.E.V., 426 N.J. Super. at 487 n.1.

Now, rehabilitative alimony is a short-term award to enable the supported spouse "to complete the preparation necessary for economic self-sufficiency," Hill v. Hill, 91 N.J. 506, 509 (1982), and "ceas[es] when the dependent spouse is in a position of self-support," Hughes v. Hughes, 311 N.J. Super. 15, 31 (App. Div. 1998) (citing Weber v. Weber, 268 N.J. Super. 64, 71 (App. Div. 1993)). The award must be based on a rehabilitation plan that "shows the scope of rehabilitation, the steps to be taken, and the time frame, including a period of

employment during which rehabilitation will occur." N.J.S.A. 2A:34-23(d); see Finelli v. Finelli, 263 N.J. Super. 403, 406-07 (Ch. Div. 1992) (a "casual reference" at trial of a party's intention to return to school was not a sufficient basis to award rehabilitative alimony); Mishlen v. Mishlen, 305 N.J. Super. 643, 650-51 (App. Div. 1997) (affirming an award of rehabilitation alimony limited to six months where no specific plan was set forth); cf. Carter v. Carter, 318 N.J. Super. 34, 42 (App. Div. 1999) (when awarding rehabilitative alimony, even in cases that are settled, the court must make specific findings about these statutory factors).

On the other hand, "[l]imited duration alimony is not intended to facilitate the earning capacity of a depend[e]nt spouse or to make a sacrificing spouse whole, but rather to address those circumstances where an economic need for alimony is established, but the marriage was of short-term duration such that permanent alimony is not appropriate." Cox v. Cox, 335 N.J. Super. 465, 476 (App. Div. 2000). The duration of the marriage is the "defining distinction between whether permanent or limited duration alimony is warranted." Id. at 483.

Our courts recognize a presumption that the temporal aspect of an agreement for limited duration alimony be preserved. Gordon v. Rozenwald,

380 N.J. Super. 55, 70 (App. Div. 2005). This is because "'the parties to a dispute are in the best position to determine . . . [the] least disadvantageous' resolution and fashion an arrangement that meets their particular needs." Ibid. (alteration in original) (quoting Peskin v. Peskin, 271 N.J. Super. 261, 275 (App. Div. 1994)). Modification of a voluntary and predetermined arrangement for termination of alimony is not ordinarily equitable and fair. Id. at 68.

A party seeking a modification of an alimony agreement has the burden of demonstrating that he or she is entitled to some reformation of the agreement. See Lepis v. Lepis, 83 N.J. 139, 157 (1980). To modify rehabilitative alimony or the amount of limited duration alimony, as compared to its duration, a showing of "changed circumstances" or "the nonoccurrence of circumstances that the court found would occur at the time of the award" is necessary. N.J.S.A. 2A:34-23(c), (d). However, to modify the length of the term of limited durational alimony, a higher statutory showing of "unusual circumstances" is necessary. See Gonzalez–Posse v. Ricciardulli, 410 N.J. Super. 340, 356 (App. Div. 2009); N.J.S.A. 2A:34-23(c). As for converting limited duration for open durational alimony (permanent alimony),[6] courts should require the heightened

_____

[6]  A 2014 amendment to N.J.S.A. 2A:34-23 substituted "open durational alimony" for "permanent alimony." L. 2014, c. 42, §1.

"unusual circumstances" showing unless a party demonstrates, "as part of a prima facie case, that the term is a substitute for permanent alimony premised upon a promise or expectation of alternative funds for support that has not been fulfilled or realized." Gordon, 380 N.J. Super. at 70.

Here, it is undisputed that plaintiff is disabled and her ability to pursue gainful employment is impaired, and that the judge properly recognized the same based on plaintiff's successful application for SSD benefits. See Gormley v. Gormley, 462 N.J. Super. 433, 444 (App. Div. 2019) (recognizing SSA determination a party is disabled is prima facie evidence of the party's inability to be gainfully employed).

What is unclear is whether the parties intended to provide for rehabilitative or limited duration alimony in their PSA, regardless of their reference to the former and in light of the eight years that passed between the 2012 order and the orders under appeal. Although the PSA states "rehabilitative alimony" would be paid for five years, there is no reference to a rehabilitative plan in the PSA or in the DJOD. Rather, the PSA includes separate provisions requiring defendant to pay fifty percent of plaintiff's remaining school costs and requiring the parties to not interfere with each other's personal matters or professional pursuits, including employment.

However, the intent of the parties pertaining to the agreed upon type of alimony is unclear because of the PSA's description of alimony as being rehabilitative, and the parties' subsequent acknowledgement that it was originally fixed for a limited duration. Under these circumstances, the judge should have granted oral argument and a plenary hearing to better determine the parties' intent. See Carter, 318 N.J. Super. at 50 n.9. Notably, the judge's decision does not even mention the fact that the parties identified the type of alimony as "rehabilitative" and does not provide any findings as to why she determined that the parties' selection of rehabilitative alimony was to be treated as limited duration alimony.

By not doing so, the judge had no basis to conclude the parties intended what they described as rehabilitative alimony to be limited duration alimony. The resolution of that issue was crucial to the determination of the burden plaintiff had to meet when seeking to extend the term or convert the agreed upon alimony to open durational alimony. Moreover, without a sufficient explanation, our appellate review of her determination is significantly impeded. See Strahan v. Strahan, 402 N.J. Super. 298, 310 (App. Div. 2008).

For that reason, we are constrained to remand so the judge can also develop the necessary facts to support a determination of the type of alimony

27

the parties intended. If the judge determines the parties intended on providing for rehabilitative alimony, then the judge must apply the lesser standard for determining whether modification of rehabilitative alimony is warranted under the circumstances, and if not, the judge must explain her rejection of the PSA's agreed upon description and presume the heightened standard applies.

If on remand the judge determines that the alimony should be converted to open durational alimony, or otherwise modified, so that it extends into the future, the judge must also address defendant's claim that plaintiff's cohabitation with another warranted termination of alimony, an issue the judge did not address in her earlier decisions.

However, to be sure, by our remand of this matter we do not imply that any specific outcome should be reached by the judge after complying with our directive to hold a plenary hearing after giving the parties an opportunity for reasonable discovery as to the limited issue about alimony being terminated or not.

V.

Finally, despite plaintiff's arguments on appeal, we conclude that we have no cause to remand this matter to a different judge. While we do have "the authority to direct that a case be assigned to a new judge upon remand,"

28

Graziano v. Grant, 326 N.J. Super. 328, 349 (App. Div. 1999), our authority is sparingly exercised; and we will only do so when it is necessary "to preserve the appearance of a fair and unprejudiced hearing," Pressler & Verniero, Current N.J. Court Rules, cmt. 4 on R. 1:12-1 (2021); see also Graziano, 326 N.J. Super. at 350. While we recognize the judge here mistakenly calculated child support and did not provide a sufficient basis for her orders as to alimony, there is no evidence that the judge was unfair to either party. Significantly, as the judge's order on reconsideration demonstrated, the judge did not express commitment to her findings, but was willing to consider that she was mistaken in the first instance, to a point. See Graziano, 326 N.J. Super. at 349.

VI.

To the extent we have not considered plaintiff's remaining arguments, if any, we conclude they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Vacated and remanded for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

29

A-2225-20